## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **ULTIMATEPOINTER, LLC,** | |
| **Plaintiff,** | **Civil Action No. 6:11-CV-496 (LED)** |
| | **Civil Action No. 6:11-CV-571 (LED)** |
| **v.** | |
| | **Jury Trial Demanded** |
| **NINTENDO CO., LTD., *ET AL.*,** | |
| **Defendants.** | |

## OPPOSED MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS

Defendants respectfully request leave under Local Patent Rule 3-6 and Federal Rule of Civil Procedure 16(b) to supplement their invalidity contentions.

## I.    INTRODUCTION

Good cause exists to allow Defendants to amend their P.R. 3-3 invalidity contentions. Applying the Court's four-factor test for determining good cause, Defendants show here the specific reasons and factual developments that warrant supplementation with five additional pieces of prior art.

Defendants timely served their original invalidity contentions but later, through foreign non-public sources, learned of the existence of additional prior art.  Defendants promptly disclosed the art to Plaintiff and now seek leave to formally add the five references and corresponding claim charts to their contentions.  The first two references are the second and third generations of a prior-art video game identified and charted in Defendants' original invalidity contentions.  The third reference is a separate game but based on the same technology and made by the same third-party manufacturer.  The remaining two new references involve similar

technology developed by a different manufacturer.  All five references are the result of Defendants' diligent efforts to timely identify and produce prior art, but required the cooperation of a non-party Japanese video game company for their discovery.  The references are important to Defendants' case because they address issues touching on *every* asserted claim—"calibration," "image sensor," and "image sensing device"—thus giving the proposed supplementation far-reaching effect on the litigation.

The litigation itself remains at an early stage.  Trial is scheduled for late 2014.  Neither side has served any interrogatories, and only one deposition has been taken.  Defendants provided Plaintiff with an initial set of claim charts for the new references over two weeks ago and made the prior art systems available for inspection.  Plaintiff may attempt to argue that it is prejudiced because the parties already are engaged in claim construction briefing, but Plaintiff still has ample time to make adjustments to its claim construction positions in its reply brief. Furthermore, Defendants are amenable to supplemental briefing, though it is unlikely such briefing is needed.

Plaintiff, on the other hand, already served proposed supplemental infringement contentions *twice*, most recently on December 11—after *Markman* briefing had begun. Nevertheless, Plaintiff surprisingly opposes this Motion, which if granted would allow Defendants to supplement their invalidity contentions for the ***first*** time.

## II.   FACTUAL BACKGROUND

### A.   Defendants Diligently Pursued The New References.

Defendants' original P.R. 3-3 invalidity contentions included a prior art video game called HOUSE OF THE DEAD ("HOTD"), designed and manufactured by SEGA, a non-party Japanese video game company.  *See* Exhibit 1 at 5 (Nintendo's Aug. 21, 2012 P.R. 3-3 Invalidity Contentions (identifying HOTD as prior art exhibit 19)).  Defendants sought to further develop

the invalidity theories predicated on HOTD.  To do so, Defendants Nintendo Co., Ltd. and

Nintendo of America Inc. (together, "Nintendo") asked their contacts at SEGA for more

information.  *See* Exhibit 2 at ¶ 5 (Declaration of Hiroyasu Uda).  Those communications led to

the identification by SEGA of a "type-2" sensor used in the second and third generations of

HOTD (HOUSE OF THE DEAD 2 ("HOTD2") and HOUSE OF THE DEAD 3 ("HOTD3")).  *Id.* at ¶ 6.

SEGA further identified another of its games, CONFIDENTIAL MISSION, as also using the type-2

sensor.  *Id.*  Nintendo immediately conveyed this information to its U.S. counsel on October 26,

2012.  *Id.* at ¶ 7.  Counsel obtained physical samples of the games and conducted analysis by

November 19, leading to the production of invalidity claim charts to Plaintiff on December 10.

*See* Exhibit 3 at ¶¶ 3-6, 8 (Declaration of Joseph S. Presta).

Further investigation into the SEGA prior art led to the identification of another game,

TERABURST, made by a different Japanese video game company, Konami.  *See* Exhibit 2 at ¶ 8

(Uda Decl.).  TERABURST uses technology similar to SEGA's type-2 sensor.  Nintendo also

learned that Konami owns a patent describing the sensor technology used in TERABURST.  *Id.*

Nintendo immediately conveyed this information to its U.S. counsel on December 3, 2012.  *Id.* at

¶ 9.  Without delay, counsel analyzed TERABURST and the corresponding U.S. Patent No.

6,110,039 ("the '039 patent").  *See* Exhibit 3 at ¶¶ 7-8 (Presta Decl.).  Defendants provided

Plaintiff with invalidity claim charts for the '039 patent on December 10.  *Id.*  On December 21,

Defendants informed Plaintiff that physical samples of the prior art systems are available for

inspection.  *See* Exhibit 4 (Dec. 21, 2012 letter from S. Geiszler to T. Warden).  In total there are

sixteen claim charts based on the five new references, all of which were produced to Plaintiff on

December 10 and are attached here as Exhibits 5-20.

**B.      Defendants' Continuing Search for and Analysis of Prior Art Should Be Viewed in Light of Plaintiff's Evolving, Expansive Infringement Contentions.**

Plaintiff served its *original* infringement contentions on June 8, 2012.  At Defendants' insistence, Plaintiff served its *first* supplemental infringement contentions on September 9.  The original and first supplemental infringement contentions disclose alleged infringement by over 2,000 products manufactured by more than 200 companies, only one of which, Nintendo, is a party to this litigation.  Because Plaintiff's first supplemental contentions still failed to meet the requirements of P.R. 3-1, Defendants engaged in extensive meet-and-confers with Plaintiff and eventually filed their Motion to Enforce Patent Rule 3-1 on November 11.  *See generally* Defendants' Motion to Enforce Patent Rule 3-1 (Dkt. 220 in 496 Action / Dkt. 167 in 571 Action) (explaining unworkable scope of Plaintiff's infringement contentions).  Along with its opposition to that motion, Plaintiff served its *second* supplemental infringement contentions on December 11.  The second supplemental contentions contain even further changes to Plaintiff's infringement theories.

Plaintiff twice modified its infringement contentions with respect to asserted claims that include the term "image sensor," to which the new references are highly relevant.  For example, Plaintiff's claim chart explanation for the second limitation of claim 1 of the '729 patent ("an image sensor ...") grew from *one* paragraph on June 8 to *four* paragraphs on September 9 to *seven* paragraphs on December 11, 2012.  *Compare* Exhibit 21 at 3, *with* Exhibit 22 at 3-4, *with* Exhibit 23 at 3-5 (original, first and second proposed supplemental infringement claim charts for '729 patent, respectively).  Similarly, Plaintiff's evolving charts for other asserted claims (claims that do not expressly require an "image sensor") rely in part on the existence of an alleged "image sensing device."  *See, e.g.,* Exhibit 24 (claim charts for asserted claims of '321 patent).

In light of such changes to Plaintiff's infringement theories, Defendants have no choice but to continue developing their invalidity defenses.  Yet Plaintiff is now attempting to continue

- 4 -

developing its infringement contentions while stopping Defendants from changing their

invalidity contentions.

## III.    LEGAL STANDARD

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all

parties with adequate notice and information with which to litigate their cases." *Computer*

*Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp.2d 819, 822 (E.D. Tex. 2007).  Under Local

Patent Rule 3-6(b), supplementation of infringement contentions or invalidity contentions "may

be made only by order of the Court, which shall be entered only upon a showing of good cause."

The good cause standard requires the party seeking relief to show that, despite its exercise of

diligence, it cannot reasonably meet the scheduling deadlines. *S&W Enters., L.L.C. v. Southtrust*

*Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003). The Court has broad discretion to allow

scheduling order modifications and considers four factors to determine if modification is

appropriate: (1) the explanation for the party's failure to meet the deadline, (2) the importance of

what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would

be excluded, and (4) the availability of a continuance to cure such prejudice. *Id.* at 536; *Alt v.*

*Medtronic, Inc.*, No. 2:04-cv-370, 2006 WL 278868, at *2 (E.D. Tex. Feb. 1, 2006) (Davis, J.). A

party's failure to meet a deadline due to mere inadvertence is tantamount to no explanation at all.

*S&W Enters.*, 315 F.3d at 536.

## IV.    ARGUMENT

### A.    Defendants Were Diligent in Discovering and Disclosing the New Prior Art.

Defendants' P.R. 3-3 invalidity contentions identify more than 38 prior art references and

include 681 claim charts.  *See* Exhibit 1 (Nintendo's original invalidity contentions).[1]  Clearly

Defendants do not take lightly their obligations to identify and produce relevant prior art.

---

[1] Nintendo served P.R. 3-3 and 3-4 disclosures on August 21, 2012, and the Retailer Defendants served P.R. 3-3 and 3-4 disclosures on October 5, 2012, as allowed by the Court's August 22, 2012 Amended Scheduling Order.

Indeed, Plaintiff never challenged the sufficiency of Defendants' disclosures.  Defendants,

however, did not cease developing their invalidity theories after serving their P.R. 3-3

disclosures.  Instead, they continued to research some of the key prior art references included in

the disclosures, including HOUSE OF THE DEAD.

 In their original invalidity contentions, Defendants provided Plaintiff with all the

publicly available information they possessed about HOTD.  However, as part of their due

diligence, Defendants continued to seek out additional, non-public information might also aid in

their analysis.  Thus, Nintendo reached out to SEGA, the Japanese maker of HOTD.  *See* Exhibit

2 at ¶ 5 (Uda Decl.).  That overture ultimately led to the discovery of the five references now

offered as additional prior art.  *See generally* Exhibits 2, 3 (Uda and Presta Decl.).  Defendants

began disclosing these references and invalidity claim charts based on them weeks ago.  *See*

Exhibit 3 at ¶ 8.

Defendants' diligence here is markedly better than that of the movant in *Lake Cherokee*

*Hard Drive Technologies LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, Dkt. 259, slip op. (E.D.

Tex. Jul. 2, 2012) (attached as Exhibit 25).  There, the Court allowed supplementation of

infringement contentions despite the plaintiff's concession that it should have (1) clarified with

the defendant whether an earlier set of supplemental contentions were sufficient, or (2) served

the supplemental contentions much sooner.  *Id.* at 4.  Indeed, the Court found that "by [movant's]

own admission, the first 'good cause' factor does not weigh in favor of granting the requested

leave" but ultimately found good cause and granted leave to supplement.  *Id.* at 4, 5.

Here, Defendants' continuous development of their invalidity contentions—beginning

many months before the original P.R. 3-3 deadline and continuing to this day—reflects their

diligence.  To learn of the five references, Nintendo had reach out to and establish talks with a

non-party Japanese company that is beyond subpoena reach and that might have given little, if

anything, in response to the time-consuming Hague Convention letters-rogatory process. Defendants' proactive steps distinguish this case from those in which movants missed deadlines due to inadvertence or gamesmanship.  *See, e.g., MASS Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (E.D. Tex. May 30, 2008) (Davis, J.) (counterclaim defendant purposefully chose not to timely serve invalidity contentions).  Thus, Defendants respectfully submit that they have met the first element of the Court's analysis.

> **B.**     **The Five New References Are Highly Important to Defendants' Case.**

The five new references all address, among other things, the "image sensor" limitation found in *all* five asserted claims of U.S. Patent No. 8,049,729.  *See* Exhibit 21 (P.R. 3-1(c) charts for asserted '729 patent claims).  Similarly, three asserted claims of U.S. Patent No. 7,746,321 require an "image sensor," and Plaintiff's infringement claim charts for *all* eighteen asserted claims of that patent refer to an "image sensing device."  *See* Exhibit 24 (P.R. 3-1(c) charts for asserted '321 patent claims).  Thus, the issue of what constitutes an "image sensor" or "image sensing device" for purposes of infringement and invalidity will figure prominently at trial. Moreover, all five references involve "calibration" methods which is the overarching idea of all asserted claims and is expressly required in 15 claims of the '321 patent.  *Id.*

Although the asserted claims arise from two related patents, they allegedly cover a diverse array of accused calibrations methods.  Indeed, Plaintiff asserts 23 claims against more than 2,000 products designed by more than 200 companies.  *See generally* Defendants' Motion to Enforce Patent Rule 3-1.  Defendants thus require a robust set of invalidity theories based on multiple prior art references to address the various asserted claims.  The five new references are not kitchen-sink additions to a stockpile of prior art but, instead, prior art of primary importance to key issues in this case.  This factor strongly supports the Court's good cause standard.

### C.      The Proposed Supplementation Will Not Prejudice Plaintiff.

During the meet-and-confer process, Plaintiff refused to agree to the proposed

supplementation because, in their view, Defendants already have "too many" prior art references.

Plaintiff argued  that five proposed supplemental references would exacerbate that problem.  But

if that is indeed Plaintiff's reasoning, Plaintiff is mistaken.

Plaintiff's own infringement contentions encompass over 2,000 products manufactured

by approximately 200 companies, only one of which, Nintendo, is a defendant to this case.  If

any party has expanded this case to an unworkable size, it is Plaintiff.  Furthermore, there is no

set limit on the number of prior art references a defendant may advance in its invalidity

contentions.  Of course, the number of references relied on at trial must be within reason and fit

within the time allotted.  But at this stage in the litigation—*twenty months before trial* and

before a *Markman* decision—any alleged prejudice to Plaintiff based on the quantity of prior art

is theoretical, not real.

Each new reference has unique features that add to its value as prior art but builds on

technology present in Defendants' original invalidity contentions.  HOTD2 and HOTD3 are

newer versions of HOTD, which already is in-suit.  The differences over the original HOTD

warrant their addition to this case, but they do not constitute a wholly new infringement theory.

Likewise, CONFIDENTIAL MISSION incorporates similar technology, *i.e.*, calibration technique

using SEGA type-2 sensors, and should be included as well.  *See* Exhibit 2 at ¶ 6 (Uda Decl.).

Konami's TERABURST and the corresponding '039 patent incorporate another version of that

technology.  Thus, any objection to adding these references on the basis of prejudice or surprise

lack merit.

With no substantive prejudice available, Plaintiff may argue that it is too late for

supplementation.  But that cannot be the case when Plaintiff served proposed supplemental

infringement contentions on December 11, 2012.  Likewise, the fact that the *Markman* hearing is upcoming should not preclude Defendants' supplementation.  *See, e.g., Lake Cherokee*, at 4-5 (granting leave to supplement infringement contentions a few weeks after *Markman*).  Plaintiff has access to the new references and claim charts based on them.  And Defendants are agreeable to limited supplemental *Markman* briefing, if Plaintiff so requests.  This factor strongly supports the Defendants' request for leave to supplement its contentions.

      **D.**      **A Continuance Is Available But Not Needed.**

Trial is set for September 8, 2014, and the Court has not yet held its *Markman* hearing.  Neither side has served interrogatories, and the only deposition taken to date is that of the inventor in preparation for *Markman* briefing.  Thus, there is no need for a continuance of this litigation.  *See, e.g., id.* (granting leave to supplement infringement contentions a few weeks after *Markman* hearing but thirteen months before trial).  This factor weighs heavily in Defendants' favor.

**V.**      **CONCLUSION**

For the foregoing reasons, Defendants submit that good cause exists and respectfully request that the Court grant Defendants leave to supplement their P.R. 3-3 invalidity contentions with the five references identified above.

Dated:  December 27, 2012

Respectfully submitted


By: /s/ Mark C. Nelson

Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@snrdenton.com
SNR DENTON US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910

Arthur S. Beeman (Lead Attorney)
Admitted *pro hac vice*
arthur.beeman@snrdenton.com
SNR DENTON US, LLP
525 Market Street, Suite 2600
San Francisco, California 94105-2708
Telephone:  (415) 882-0138
Facsimile:   (415) 882-0300


**Attorneys for Nintendo Co., LTD. (NCL);
Nintendo of America Inc. (NOA); Best Buy
Stores, L.P.; BestBuy.com, LLC; Best Buy
Purchasing, LLC; BJ's Wholesale Club, Inc.;
CompUSA.com, Inc.; TigerDirect, Inc.; Dell
Inc.; GameStop Corporation; PC Connection,
Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart
Corporation; Target Corporation; Toys "R"
Us-Delaware; Trans World Entm't Corp.; Wal-
Mart Stores, Inc.; Wal-Mart Stores Texas,
LLC; Sam's East, Inc.; and Sam's West, Inc.**

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone:  (903) 595-3111
Facsimile:  (903) 595-0191

**Attorneys for Nintendo Co., Ltd.; Nintendo of America Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; Dell Inc.; GameStop Corporation; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entm't Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone:  (903) 938-8900
Facsimile:  (972) 767-4620

David E Finkelson
Virginia Bar No.  44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone:  (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

Dated:  December 27, 2012                    Respectfully submitted


                                             By: /s/ Christopher M. Joe w/permission
                                             Christopher M Joe
                                             Texas Bar No. 00787770
                                             Buether Joe & Carpenter LLC
                                             1700 Pacific Avenue
                                             Suite 2390
                                             Dallas, TX 75201
                                             214/466-1272
                                             Fax: 214/635-1828
                                             Email: Chris.Joe@bjciplaw.com

                                             **Attorney for RadioShack Corporation**


## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2012, I served the forgoing document on all

counsel of record via email pursuant to Local Rule CV-5(3)(A).


                                             By: /s/ Mark C. Nelson


## CERTIFICATE OF CONFERENCE

I certify that the parties have complied with the meet-and-confer requirements set forth in

Local Rule CV-7(h).  On December 19, 2012, counsel for Defendants, Mark C. Nelson and Trey

Yarbrough, telephonically met and conferred with counsel for Plaintiff, Greg Maag and Thomas

Warden, regarding the foregoing motion.  Counsel gave each other the opportunity to express

their respective views concerning the subject matter of the motion.  The parties had a frank and

meaningful discussion, comparing their views and the relative strengths of each position.

Plaintiff takes the position that Defendants have adequate contentions and prior art references

and that it's too late and burdensome for Plaintiff to consider additional contentions and

references.  Defendants disagree for the reasons set forth in the motion.  The parties' good faith discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve.

By: /s/ Mark C. Nelson