IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ULTIMATEPOINTER, L.L.C.**, | § § § | |
| Plaintiff, | § § § | **NO. 6:11-CV-496-LED** |
| | § | **NO. 6:11-CV-571-LED (Consolidated)** |
| v. | § § | |
| | § | Jury Trial Demanded |
| **NINTENDO CO., LTD.,** *ET AL.*, | § § | |
| Defendants. | § | |

# DEFENDANTS' MOTION TO STRIKE P.R. 3-1 INFRINGEMENT CONTENTIONS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND..........................................................................................2

   A. "image sensor"................................................................................................... 3

   B. New Doctrine of Equivalents Theory................................................................ 4

   C. Claims Requiring Software Instructions........................................................... 5

III. LEGAL STANDARDS ...................................................................................................6

VI. ARGUMENT...................................................................................................................7

   A. The Court Should Strike Plaintiff's Infringement Allegations for the '729 Patent Claims Because Plaintiff Refuses to Provide Adequate Contentions Relating to "image sensor"................................................................................................................... 7

   B. The Court Should Strike Plaintiff's New Doctrine of Equivalents Theory....................... 9

   C. The Court Should Strike Plaintiff's Infringement Allegations for Claims that Require Software Instructions Due to Plaintiff's Refusal to Cite Source Code. ....................... 10

CONCLUSION...............................................................................................................14

## **TABLE OF EXHIBITS**

Exhibit 1 – U.S. Patent No. 7,746,321

Exhibit 2 – U.S. Patent No. 8,049,729

Exhibit 3 – Third Amended Infringement Contentions ("TAIC")

Exhibit 4 – Claim Charts for '321 Patent Asserted Claims

Exhibit 5 – Claim Charts for '729 Patent Asserted Claims

Exhibit 6 – June 3, 2013 letter from S. Bennett to T. Warden

Exhibit 7 – June 26, 2013 letter from S. Geiszler to G. Maag

Exhibit 8 – July 1, 2013 email from G. Maag to S. Geiszler

Exhibit 9 – July 15, 2013 email from S. Geiszler to G. Maag

Exhibit 10 – July 19, 2013 letter from G. Maag to S. Geiszler

Exhibit 11 – July 23, 2013 letter from S. Geiszler to G. Maag

Exhibit 12 – July 29, 2013 letter from G. Maag to S. Geiszler

Exhibit 13 – August 20, 2013 letter from M. Nelson to G. Maag

Exhibit 14 – August 20, 2013 email exchange between T. Warden and S. Geiszler

I.      **INTRODUCTION**

Defendants have, for more than one year, repeatedly asked Plaintiff to serve P.R. 3-1 infringement claim charts that set forth Plaintiff's infringement theories with the requisite specificity. Yet despite *four* attempts (Plaintiff's original infringement contentions and three supplementations—the last per Court order), Plaintiff's contentions still fail to provide notice of Plaintiff's infringement theories. Notably, Plaintiff served its third amended infringement contentions after the Court's Claim Construction Order. But Plaintiff conspicuously ignores the construction of "image sensor," a key claim term. Also, Plaintiff's new contentions add a new theory under the doctrine of equivalents without good cause. Plaintiff has now had four bites at the apple, and this litigation is in the last months of discovery. Defendants therefore respectfully request that the Court strike the portions of Plaintiff's contentions that fail to address "image sensor" and that add the new doctrine of equivalents theory.

Plaintiff's new contentions are further deficient because they fail to cite to any source code for numerous claims that focus explicitly on software. For example, four asserted claims are *Beauregard* claims, and ten other asserted claims require a "processor … programmed to" perform certain functions. It cannot be disputed that, for those claims, source code is the best evidence of whether the requisite software instructions are present. Defendants made source code available for inspection months ago, before Plaintiff's new contentions were due. But to date, Plaintiff has spent only one day reviewing source code and canceled all other scheduled inspections. Plaintiff cites *no* source code in its contentions, and, further, insists that source code is not required to prove infringement of those claims. Accordingly, Defendants ask the Court to strike the portions of Plaintiff's contentions pertaining to claims that require software. In the alternative, Defendants ask the Court to order Plaintiff to immediately supplement those portions with pinpoint citations to source code.

## II. FACTUAL BACKGROUND

In these consolidated cases, Plaintiff UltimatePointer, LLC ("Plaintiff") asserts two patents: U.S. Patent Nos. 7,746,321 and 8,049,729 (Exhibits 1 and 2, respectively). Plaintiff served its original infringement contentions ("PIC") on June 8, 2012. At Defendants' insistence, Plaintiff served its first amended infringement contentions ("FAIC") on September 9, 2012. Because those contentions still failed to satisfy P.R. 3-1, Defendants engaged in extensive meet-and-confers with Plaintiff and eventually filed their Motion to Enforce Patent Rule 3-1 on November 11. (Dkt. 220). Along with its opposition to that motion, Plaintiff served its second amended infringement contentions ("SAIC") on December 11, 2012. The second amended contentions even further changed Plaintiff's infringement theories. *See* Defendants' Motion for Leave to Supplement Invalidity Contentions, at 4 (Dkt. 244) (detailing the evolution of Plaintiff's infringement theories regarding "image sensor" from PIC to FAIC to SAIC). But still, Plaintiff's SAIC failed to provide Defendants with adequate specific notice of Plaintiff's infringement theories.

On May 28, 2013, the Court issued its Claim Construction Order (Dkt. 268) and granted Defendants' Motion to Enforce P.R. 3-1 (Dkt. 269). Per that Order, Plaintiff served its third amended infringement contentions ("TAIC") on June 14, 2013. *See* Exhibits 3-5 (TAIC, claim charts for '321 patent claims, and claim charts for '729 patent claims, respectively). The TAIC remains in effect today.

The TAIC, however, are deficient or improper in at least three ways. First, the TAIC failed to provide sufficient specificity of Plaintiff's infringement theories with respect to the "image sensor" limitation of the asserted '729 patent claims (1, 3, 5, 6, 12).[1] Second, the TAIC

---

[1] As discussed in Defendants' prior briefing, "image sensor" is one of the central issues of this case. *See* Defendants' Motion for Leave to Supplement Invalidity Contentions, at 4 (Dkt. 244).

2

improperly introduced a new infringement theory under the doctrine of equivalents for the claim term "coupled to" ('321 patent claims 27, 31-34, 37; and '729 patent claims 1, 3, 5, 6).  <u>Third</u>, the TAIC failed to cite or even discuss source code for the four asserted *Beauregard* claims of the '321 patent (44, 47, 51, 52) as well as ten other asserted claims that require a "processor … programmed to" perform certain functions ('321 patent claims 27, 31-34, 37; and '729 patent claims 1, 3, 5, 6).

As detailed below, Defendants raised each of these issues with Plaintiff through extensive correspondence, culminating in a meet and confer on August 23rd that ended in an impasse.  *See* Exhibit 13 (August 20, 2013 letter from M. Nelson to G. Maag).

### A.   "image sensor"

Upon reviewing the TAIC, Defendants sent a letter to Plaintiff on June 26th, identifying deficiencies.  *See* Exhibit 7 (Jun. 26, 2013 letter from S. Geiszler to G. Maag).  Among other things, the letter addressed the TAIC's failure to adequately describe Plaintiff's infringement theories for the asserted claims of the '729 patent with respect to "image sensor"—a claim term found explicitly or by dependence in every asserted '729 patent claim.  Specifically, Defendants stated:

> Each of the asserted claims of U.S. Patent No. 8,049,729 require an 'image sensor.'  The Court construed 'image sensor' to mean 'a device that measures the intensity of reflected light from an image.'  ***The TAIC does not identify what 'reflected light from an image' is supposedly used, and indeed fails to even identify what 'image' is allegedly being used.***  Additionally, the contentions do not identify how the intensity is allegedly measured.  UP's failure to provide such fundamental information for each asserted claim renders UP's infringement contentions inadequate and fails to provide Defendants with notice of UP's infringement theories.

*Id.* at 7 (emphasis added).

After trading emails (Exhibits 8, 9), Plaintiff responded with a letter that failed to mention, at all, the "image sensor" limitations of the '729 patent claims.  *See* Exhibit 10 (Jul. 19,

2013 letter from G. Maag to S. Geiszler). Defendants followed up with another letter, again raising the "image sensor" limitation. *See* Exhibit 11 (Jul. 23 letter from S. Geiszler to G. Maag). That letter also further clarified what information was missing with respect to "image sensor":

> The questions of *(i) what UltimatePointer alleges to be "reflected light from an image" and (ii) what UltimatePointer alleges to be the "image" used* are necessary for Defendants to understand UltimatePointer's infringement theories for the '729 patent claims.

*Id.* (emphasis added).

Plaintiff responded on July 29th with a letter stating that the asserted claims do not actually require the alleged "image sensor" to meet the Court's claim construction:

> In our contentions regarding the '729 claims, we have specifically identified the accused image sensor that is housed in the enclosure of each Wii controller. We have identified the Wii image sensor as a CCD or CMOS sensor positioned in the front of the Wii controller, as shown in annotated photographs. That sensor falls within the court's definition of an "image sensor" as it is a device that will measure the intensity of reflected light from an image, as well as any other light impinging on its sensing elements. *Our contentions then explain how the accused image sensor meets the requirements of the '729 claims, <u>such requirements not requiring</u> that the image sensor use or measure any particular reflected light, or that the measurements be made in any particular matter.* Instead, the claim language requires only that the accused apparatus have an image sensor that generates: "data related to the distance between a first point and a second point" (claim 1); "data related to the orientation of said handheld device" (claims 3, 6, and 12); and "data including data of the calibration points" (claim 5). Our contentions make clear that the image sensor meets these claim requirements by generating data in response to detection of the IR lights of the sensor bar. Thus, our contentions clearly identify the components and where they reside in the accused devices, and how they meet the claim limitations.

Exhibit 12 at 2 (Jul. 29, 2013 letter from G. Maag to S. Geiszler (emphasis added)). Plaintiff did not change its position during the subsequent meet and confer.

### B.  New Doctrine of Equivalents Theory

On July 23rd, Defendants asked Plaintiff about the doctrine of equivalents theory for "coupled to" that appeared for the first time in the TAIC. *See* Exhibit 11. In response, Plaintiff

4

contended that the Court's construction of "coupled to" justified Plaintiff's insertion of a doctrine of equivalents theory for that term, despite the fact that, according to Plaintiff, the Court agreed with Plaintiff's proposed construction. *See* Exhibit 12 (Jul. 29 letter from G. Maag to S. Geiszler).

### C. Claims Requiring Software Instructions

Defendants' June 26th letter identified many deficiencies with respect to the asserted claims, particularly the inability to discern **what** Plaintiff contends satisfies the claim limitations requiring software instructions, i.e., the four asserted *Beauregard* claims and ten other claims requiring a "processor … programmed to" perform certain functions. *See generally* Exhibit 4.

Plaintiff's July 19th letter argued that source code was unnecessary to prove infringement and further implied that, even if necessary, source code was unavailable. For example, regarding *Beauregard* claim 47 of the '321 patent, Plaintiff wrote:

> If your complaint is that the contentions do not go so far as to explain how the processor in the Wii is programmed, *that specificity is not required under the claim language* of [claim 47], but further, that information is not publically available, but is in the software, closely guarded by Nintendo.

Exhibit 10 at 19 (emphasis added). Notably, however, Nintendo made its source code available for inspection beginning June 3rd—more than a week before Plaintiff's TAIC and six weeks before Plaintiff's letter. *See* Exhibit 6 at 1 (June 3, 2013 letter from S. Bennett to T. Warden).[2]

Defendants again identified this deficiency—and Plaintiff's obligation to provide pinpoint citations to available source code—in their August 20th letter. Exhibit 13. During the

---

[2] Plaintiff contends that Defendants should have made source code available for inspection in August 2012 under P.R. 3-4(a)—even before entry of the Protective Order. *See generally*, Plaintiff's Sur-Reply to Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 7,746,321 Claim 47, at 3 (Dkt. 287). Nintendo, however, made clear that no source code would be made available absent a protective order. Plaintiff did not complain about Nintendo's position at that time (or thereafter until shortly before the Court's May 28, 2013 Scheduling Conference). Nor did Plaintiff do anything to expedite negotiations of the draft protective order. Indeed, it was Defendants who proposed the initial draft to start the process.

5

August 23rd meet and confer, Plaintiff again refused to provide such citations. Indeed, plaintiff repeated its position that it did not need to rely on source code to prove infringement, and thus need not cite source code in its claim charts. Plaintiff added that "if and when" Plaintiff decided to rely on source code, it would let Defendants know "at that time." Plaintiff then mentioned that expert reports are soon upcoming, so Defendants would know from Plaintiff's *expert report* whether Plaintiff ultimately relies on source code.

### III. LEGAL STANDARDS

The Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (striking portions of infringement contentions that failed to comply with local patent rules). Accordingly, the rules require plaintiffs to "formulate, test, and crystallize their infringement theories" before providing their infringement contentions. *ConnecTel, LLC v. Cisco Sys.*, Inc., 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (local patent rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation") (internal quotation marks omitted).

Patent Rule 3-1(c), in addition to requiring that the patent holder "identify[] specifically where each element of each asserted claim is found within each Accused Instrumentality," also requires that the particular theories of infringement be set forth with "***sufficient specificity to provide defendants with notice of infringement*** beyond that which is provided by the mere language of the patent [claims] themselves." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp.2d 754, 755 (E.D. Tex. 2004) (emphasis added)). Put another way, the Patent Rules limit the "patentee's time for trolling the proverbial waters for a theory of infringement" and require that the "patentee [] fish or cut bait with respect to its specific theory of infringement." *Big*

6

*Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1229 (C.D. Cal. 2010) (requiring pinpoint citation of source code); *see also Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 WL 1607717, *5 (C.D. Cal. 2009) (same). Similarly, the Patent Rules require that the initial contentions disclose whether the patent holder is relying on literal infringement or the doctrine of equivalents. P.R. 3-1(d).

P.R. 3-6(a) provides that a party may amend or supplement its infringement contentions without leave within 30 days of claim construction, but only if the party "believes in good faith that the Court's Claim Construction Ruling so requires." P.R. 3-6(a); *see Nike, Inc. v. Adidas Am., Inc.,* 479 F. Supp.2d 664, 667 (E.D. Tex. 2007). Otherwise, a party seeking to amend or supplement infringement contentions may do so "only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b).

The Court has the inherent power to impose any just sanction for a plaintiff's failure to provide adequate infringement contentions, including the ability to strike deficient contentions and preclude infringement theories. *See, e.g., Nike*, 479 F.Supp.2d at 668. Accordingly, the Court has the authority to strike portions of Plaintiff's Infringement Contentions for failure to comply with the requirements of P.R. 3-1. *Computer Acceleration*, 503 F. Supp. 2d at 824 (striking infringement contentions); *see Michael S. Sutton Ltd. v. Nokia Corp.*, No. 6:07-cv-203, 2009 WL 9051240 (E.D. Tex. Feb. 13, 2009) (ordering plaintiff to supplement infringement contentions with pinpoint citations to source code).

VI. **ARGUMENT**

    A. **The Court Should Strike Plaintiff's Infringement Allegations for the '729 Patent Claims Because Plaintiff Refuses to Provide Adequate Contentions Relating to "image sensor".**

The Court construed "image sensor" as "a device that measures the intensity of reflected light from an image." Claim Construction Order at 28 (Dkt. 202). Therefore, to provide

7

Defendants with notice of its actual infringement theory, Plaintiff must identify what it contends the "image" to be, and explain how the device measures the intensity of the light reflected from that image. To state it differently, Plaintiff would need to provide notice as to how it contends the accused products meet the claims as the Court construed them. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp.2d 754, 755 (E.D. Tex. 2004); *ConnecTel*, 391 F. Supp.2d at 528 (noting that source code is necessary to "fill the gaps" when plaintiff alleges infringement by software products); *Big Baboon*, 723 F. Supp. 2d at 1228 (same).

With respect to "image sensor," Plaintiff's TAIC fails to put Defendants on notice as to how the '729 patent claims are allegedly satisfied. The TAIC states that "image sensor 40 is a CCD or CMOS image sensor" that "is sensitive to the IR light sources emitted by the sensor bar 8." Exhibit 5, at 3-4. The Court's claim construction, however, requires an "image sensor" to be "a device that *measures* the intensity of reflected light from an image." Claim Construction Order at 28 (emphasis added). Plaintiff's purported contentions thus fail to put Defendants on notice of Plaintiff's theory with respect to this element in at least three ways. First, Plaintiff fails to set forth any theory how light "*emitted*" from the IR lights in the sensor bar could be considered "reflected from an image." Second, Plaintiff fails to set forth what it alleges the "image" reflecting the light could be. And third, Plaintiff fails to set forth how the alleged CMOS or CCD allegedly "measures" the intensity of that alleged reflected light.

These deficiencies are important because, as Plaintiff is well aware, the Wii Remote includes a filter that permits IR light to pass through the CMOS sensor while reducing light of other wavelengths. Additionally, the CMOS sensor employs an algorithm responsive to infrared

8

light.[3] In other words, the CMOS sensor "sees" only IR light. Thus, in addition to asserting that the claims do not require the alleged image sensor to actually perform according to the Court's construction, Plaintiff's TAIC fail to provide any theory under which the CMOS sensor or CCD could plausibly meet the "image sensor" definition.

Defendants have already sought and obtained relief from the Court because Plaintiff failed to provide sufficient contentions. Plaintiff has now made four attempts to set forth how Defendants' products allegedly meet the "image sensor" limitation. In none of these attempts has Plaintiff supplied contentions that put Defendants on notice of its actual theory of infringement for this element. Accordingly, Defendants respectfully request that the Court put an end to Plaintiff's "trolling for a theory of infringement" and strike Plaintiff's contentions for claims 1, 3, 5, 6, and 12 of the '729 patent, all of which require an "image sensor." *See Diagnostic Sys.*, 2009 WL 1607717, at *6 (noting plaintiff-patentees must provide detailed infringement contentions after having reasonable opportunity to review evidence, particularly source code).

### B. The Court Should Strike Plaintiff's New Doctrine of Equivalents Theory.

Patent Rule 3-6 is not meant to provide a "do-over" for plaintiffs that fail to articulate theories under the doctrine of equivalents. "A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions." *Nike*, 479 F. Supp.2d at 667-8. Here, Plaintiff did not include any doctrine of equivalents theories in its original contentions, first, or second sets of supplemental infringement contentions. And, as set forth below, Plaintiff cannot demonstrate

---

[3] The Wii Remote's CMOS sensor and the infrared filter are discussed in greater detail in Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 7,746,321 Claim 47, at 6, and the supporting Declaration of Keizo Ota at ¶ 7 (Dkt. 281).

9

good cause to add doctrine of equivalents to the case at this late date through the Court-ordered TAIC.

The TAIC include infringement theories under the doctrine of equivalents with respect to "coupled to." That theory is without justification in light of the Claim Construction Order. The Court observed, "The parties dispute whether the connection is necessarily wired, or whether it can also be wireless." Claim Construction Order, at 29. The Court sided with Plaintiff, concluding that a connection is possible "with or without a wire." *Id.* (ruling "coupled to" means "electrically connected either directly or indirectly").

Plaintiff argues that "the court's construction clearly encompasses wireless communications," Plaintiff's main point with respect to this term, but nevertheless insists "[W]e are entitled to amend our contentions where the court's claim construction so requires." Exhibit 12, at 2. Thus, in the same breath, Plaintiff argues that the Court's construction of "coupled to" is consistent with Plaintiff's proposal but that the construction somehow "requires" plaintiff to add a doctrine of equivalents argument to its infringement contentions. Patent Rule 3-6(a)(1), however, does not support the addition of new theories in circumstances where, as here, the plaintiff argues that the Court's claim construction is consistent with plaintiff's proposed construction. *See Nike*, 479 F. Supp.2d at 668.

Accordingly, the Court should strike Plaintiff's belated infringement theories under the doctrine of equivalents regarding "coupled to" for claims 27, 31-34 and 37 of the '321 patent and claims 1, 3, 5 and 6 of the '729 patent.

### C. The Court Should Strike Plaintiff's Infringement Allegations for Claims that Require Software Instructions Due to Plaintiff's Refusal to Cite Source Code.

Claims 44, 47, 51, and 52 of the '321 patent are *Beauregard* claims. Thus, they require "computer-executable instructions for directing a computer to perform" various steps. '321

patent at 38:55-56, 39:17-19, 40:14-16 (attached as Exhibit 1). To provide notice of how such claims are infringed, Plaintiff would need to identify the required "computer-executable instructions" that cause the computer to perform such steps. That is, Plaintiff must identify software instructions, i.e., source code. Similarly, claims 27, 31-34 and 37 of the '321 patent and claims 1, 3, 5 and 6 of the '729 patent require a "processor … programmed to" perform certain functions. *Id.* at 36:48-51, 37:36-45. For all these claims, once source code was available, Plaintiff was obligated to cite source code to provide adequate notice of its infringement theories. *See Am. Video Graphics*, 359 F. Supp.2d at 561; *ConnecTel*, 391 F. Supp.2d at 528-9.

Plaintiff, however, has not identified any source code. *See* Exhibit 2 (TAIC '321 patent Ex. I). In fact, Plaintiff has specifically stated that it does not need to provide such evidence: "If your complaint is that the contentions do not go so far as to explain how the processor in the Wii is programmed, ***that specificity is not required under the claim language*** of [claim 47]." Exhibit 10, at 19 (emphasis added); *see id.* at 21 ("How the processor is programmed to accomplish this is not required under the claim [51] language."). In addition, Plaintiff implied that the source code was not available to it, stating: "that information is not publically available, but is in the software, closely guarded by Nintendo." *Id.* at 19; *see id.* at 16, 21, 22 (similar statements regarding claims 44, 51, 52). Plaintiff is wrong on both counts.

First, the asserted *Beauregard* claims explicitly require computer code that includes specific instructions. For example, claim 47 requires "computer-executable instructions" for "determining" the spatial state of the handheld controller as well as instructions that use the spatial state to control a feature on a computer-generated image. Plaintiff's conclusory allegation that the processor is "programmed" in a certain manner does nothing to identify what specific software instructions or routines are accused (or even whether such instructions are in Nintendo-

11

provided code or in another company's code).  The same argument applies to the claims requiring a "processor … programmed to …."  Without source code citations, Plaintiff's claim charts provide no information beyond the language of the claims themselves.  Defendants are therefore left to guess about what Plaintiff might focus on, and even whose code might be accused.

Second, Nintendo made source code available well before the TAIC were due, and immediately after the Protective Order was entered.  *See* Exhibit 6.  Yet Plaintiff waited ***over two months*** after the source code was made available before seeking to inspect it.  Indeed, to date, Plaintiff has inspected the code for only a few hours of ***one*** day.  *See* Exhibit 14 (emails between T. Warden and S. Geiszler).

Moreover, for claim 47, Plaintiff attempts to accuse 199 games with a single chart. Exhibit 4 at 45.  And for claims 44 and 51, Plaintiff attempts to accuse 13 games with a single chart.  *Id.* at 38, 55.  But the Court already told the Plaintiff that it could only "use a single chart for multiple products, ***if*** separate charts would be ***identical*** for each product."  Order Granting In Part Motion to Enforce Patent Rule 3-1, at 5 (Dkt. 269) (emphasis in original).  But the charts could not be identical for *Beauregard* claims because each game will have its own source code and that code determines the operation of the game.  Further, the Court ordered that the "Plaintiff must provide an explanation of the technical and functional identity of the products represented." *Id.*  Plaintiff failed to provide such an explanation.  Not only does Plaintiff's failure contravene the Court's Order, it conflicts with Plaintiff's obligation to provide pinpoint citations to source code once available. *See Uniloc USA, Inc. v. Sony Corp of Am.*, 2011 WL 1980214, *2 (E.D. Tex. May 20, 2011) ("Should a Defendant disclose its source code, Uniloc shall amend its P.R. 3-1(c) chart to incorporate the provided source code within 30 days."); *Michael S. Sutton Ltd.*,

12

2009 WL 9051240, at *3 (ordering plaintiff to supplement P.R. 3-1 contentions with citations to source code); *Vasudevan Software, Inc. v. IBM*, No. C09-5897 RS, 2011 WL 940263, at * 7 (N.D. Cal. Feb. 18, 2011) (citing *Am. Video Graphics* and *ConnecTel* to require pinpoint citations to available source code); *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp.2d 1224, 1227-28 (C.D. Cal. 2010) (compelling pinpoint citations to source code); *Diagnostic Sys. Corp. v. Symantec Corp.*, Nos. SACV 06-1211 DOC (ANx), SACV 07-960 DOC (ANx), 2009 WL 1607717 (C.D. Cal. Jun. 5, 2009) (compelling plaintiff to supplement infringement contentions with pinpoint citations to source code within 15 days). As the Northern District of California has repeatedly held, "[w]hen the Accused Instrumentality includes computer software based upon source code made available to the patentee, patentees *must* provide 'pinpoint citations' to the code identifying the location of each limitation." *Vasudevan*, 2011 WL 940263, at *7.

      Plaintiff has had *four* chances to comply with the Patent Rules. The source code has also been available to Plaintiff since June 3, 2013 (less than a week after the Court entered the Protective Order). Plaintiff, however, waited more than two months to even request an inspection. Upon receiving that request, Defendants waived the waiting period set forth in the Protective Order to facilitate the inspection. Plaintiff has inspected the code for less than eight hours, and canceled the inspections it originally indicated it wanted to conduct over the week of August 19, 2013. *See* Exhibit 14. Plaintiff is choosing to remain willfully blind to the actual operation of Nintendo's products. Moreover, Plaintiff stated during the August 23rd meet and confer that it did not need to rely on source code to prove infringement, but that "if and when" Plaintiff decided to rely on source code, it would let Defendants know "at that time." Whether this is so Plaintiff can avoid disclosing its infringement theories until its expert reports or for some other reason, such trial by ambush is not permitted under the Patent Rules. Defendants

13

thus respectfully request that the Court strike Plaintiff's contentions for '321 patent claims 27, 31-34, 37, 44, 47, 51, and 52, and '729 patent claims 1, 3, 5 and 6.[4] In the alternative, Defendants ask the Court to order Plaintiff to provide pinpoint citations to source code for those claims within 15 days.

## CONCLUSION

For the foregoing reasons, the Court should strike the above-identified portions of Plaintiff's Third Amended Infringement Contentions.

---

[4] Defendants also ask the Court to strike the '729 patent claims for failure to adequately address "image sensor." *See* Section VI.A, above.

Dated:  August 26, 2013    Respectfully submitted

By: /s/ Mark C. Nelson

Mark C. Nelson (Lead Attorney)
Texas Bar No. 00794361
mark.nelson@dentons.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@dentons.com
DENTONS US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone:  (903) 595-3111
Facsimile:   (903) 595-0191

**Attorneys for Nintendo Co., Ltd.; Nintendo of America Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; GameStop Corporation; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entertainment Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

                                                Michael C. Smith
Texas Bar No. 18650410
michaelsmith@siebman.com
SIEBMAN BURG PHILLIPS & SMITH, LLP
P O Box 1556
Marshall, TX 75671-1556
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

David E Finkelson
Virginia Bar No. 44059
dfinkelson@mcguirewoods.com
MCGUIREWOODS LLP
One James Center
901 E Cary St
Richmond, VA 23219
Telephone: (804) 775-1157
Facsimile: (804) 225-5377

**Attorneys for Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, L.L.C., Sam's East, Inc., and Sam's West, Inc.**

Dated: August 26, 2013                    Respectfully submitted

By: /s/ Christopher M. Joe w/permission
Christopher M Joe
Texas Bar No. 00787770
BUETHER JOE & CARPENTER LLC
1700 Pacific Avenue
Suite 2390
Dallas, TX 75201
214/466-1272
Fax: 214/635-1828
Email: Chris.Joe@bjciplaw.com

**Attorney for RadioShack Corporation**

16

...

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2013, I served the forgoing document with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

By: /s/ Mark C. Nelson

**CERTIFICATE OF CONFERENCE**

I hereby certify that on August 23, 2013, a telephonic conference was held in compliance with Local Rule CV-7(h).  The attendees on behalf of Plaintiff included Greg Maag (lead attorney), Elizabeth DeReieux (local counsel) and Michael Guthrie.  The attendees on behalf of Defendants included myself (lead attorney), Trey Yarbrough (local counsel), Steven Geiszler, Jennifer Bennett and Megan Dyer.  The parties discussed each of the issues raised in the foregoing Motion but reached an impasse for the reasons set forth above.  Accordingly, the Motion is opposed.

By: /s/ Mark C. Nelson