IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ULTIMATEPOINTER, L.L.C.**, | § § § | |
| Plaintiff, | § § § | **NO. 6:11-CV-496-LED** |
| | § | **NO. 6:11-CV-571-LED (Consolidated)** |
| v. | § § | Jury Trial Demanded |
| | § | |
| **NINTENDO CO., LTD.**, *ET AL.*, | § § | |
| Defendants. | § § | |

**NINTENDO DEFENDANTS' MOTION TO COMPEL
A COMPLETE RESPONSE TO INDIVIDUAL INTERROGATORY NO. 1**

UltimatePointer, LLC's ("Plaintiff's") infringement contentions identified more than 2,000 accused products. On June 20, 2013, Nintendo Co., Ltd. and Nintendo of America Inc. (together, "Nintendo") requested that Plaintiff identify the date it first learned of each of those accused products and the date that Plaintiff first acquired or purchased each such product. Plaintiff refused to provide an answer for all but four (4) products (two Nintendo controllers, one Nintendo game, and an unnamed third-party controller). Instead, Plaintiff claimed the such information was privileged. The date that Plaintiff first learned of each of the accused products and acquired or purchased them is not privileged, however. It is solely factual. Moreover, the requested information is critical to Nintendo's and certain retailer's affirmative defenses. Nintendo, therefore, requests that the Court grant this Motion and order Plaintiff to provide such information within 10 days.[1]

## FACTUAL BACKGROUND

Plaintiff's original operative complaints only identified Nintendo products by name. *See* Dkt. No. 79 ¶ 1 (496 case); Dkt. No. 7 ¶ 1 (571 case). Plaintiff later identified seven non-Nintendo games it alleged were infringing in the context of opposing Defendants' Sever/Transfer briefing. *See* Dkt. No. 132-2 at 1-2 (496 case). A few months later, Plaintiff served its infringement contentions. Those contentions greatly expanded upon the seven games identified in its briefing. They identified more than 2,000 accused products, including some 1,900+ games. *See* Dkt. No. 220 at 3 (496 case). Later, in response to Defendants' Motion to Enforce P.R. 3-1, Plaintiff began to reduce the number of products. First, Plaintiff's proposed second amended

---

[1] Plaintiff, after being ordered to provide supplemental infringement contentions, reduced the number of accused products to approximately 200. In light of this reduction in the number of accused products, Nintendo limits this Motion to the date(s) that Plaintiff first learned of and acquired or purchased each of the current accused products. Nintendo, however, reserves its right to seek this information for the remaining 1,800+ formerly-accused products at a later date.

1

contentions (SAIC) removed more than 60 previously accused games that were "*never actually released.*" Dkt. No. 236-2 at 1 (496 case) (emphasis added).  Then, in response to the Court's Order granting Defendants' P.R. 3-1 Motion, Dkt. No. 269 (496 case), Plaintiff served its third amended infringement contentions ("TAIC") on June 14, 2013, reducing the number of accused products to approximately 239, including 42 Nintendo games, 157 third-party games, 4 Nintendo controllers, and 36 third-party controllers.

Nintendo served its first set of individual interrogatories on June 20, 2013.  Interrogatory No. 1 reads:

> For each Accused Product in the table below, identify (i) the date You first learned of the product, and (ii) the date You first acquired and/or purchased the product.[2]

For ease of reference, the Interrogatory also contained a table listing the 2,000+ formerly-accused products with blanks for Plaintiff to fill in the requested information.

Plaintiff, however, did not fully answer the Interrogatory.  Instead, Plaintiff responded that it learned of and acquired/purchased the Nintendo Wii Remote Plus, the Nintendo Wii Remote with Motion Plus Plug In, and the Nintendo Wii Sports Resort on February 10, 2010. Ex. A, at 6, 9, and 57.  Plaintiff also stated that it first learned of and purchased an unidentified and apparently unknown "non-Nintendo branded Wii Remote with a MotionPlus accessory" on an unknown date, sometime after February 10, 2010. *Id.* at 4-5.  But Plaintiff refused to provide any further information.  Instead, Plaintiff claimed privilege with respect to products allegedly first acquired by Plaintiff's trial counsel for use and/or analysis in this case or any pre-suit evaluation of the case:

---

[2] UltimatePointer, LLC's Answers and Objections to Defendants Nintendo Co., Ltd. and Nintendo of America Inc.'s First Set of Interrogatories to Plaintiff UltimatePointer, LLC (Nos. 1-3), at 4, attached as Ex. A ("Plaintiff's Responses").

2

> In addition to the General Objections set forth above, Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product and privileged attorney-client communications, for example, products first acquired by UltimatePointer's trial counsel for use and/or analysis in this case or pre-suit evaluation of the case. Subject to these objections, Plaintiff identifies in the table below the date it learned of the associated product and the date it first acquired and/or purchased the product to the extent that it does not disclose or identify attorney work product and/or privileged attorney-client communications.[3]

Plaintiff's refusal to provide the information requested is improper. Interrogatory No. 1 seeks relevant information, and neither the attorney-client privilege nor the work-product doctrine protect the underlying facts of when Plaintiff first learned of the accused Wii games and/or when it first acquired/purchased them. Nintendo, therefore, seeks an order compelling Plaintiff to provide a complete response with respect to the Wii games and accessories that are identified in Exhibits B, D and F1 to Plaintiff's TAIC.

## ARGUMENT

**A.    The Information Sought is Relevant to Nintendo's Claims and Defenses.[4]**

The information sought by Nintendo is relevant to Nintendo's laches and estoppel defenses. To prove laches, Nintendo must show that (1) Plaintiff's delay in bringing suit was unreasonable and inexcusable, and (2) Nintendo suffered material prejudice due to the delay. *A. C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (in banc). The delay period "is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." *Id.* at 1033. Similarly, to prove equitable estoppel, Nintendo must prove that Plaintiff (1) communicated something in a misleading way, either by words, conduct, or silence; (2) Nintendo relied on the communication,

---

[3] *Id.* at 4.
[4] Certain retailers also pled laches as an affirmative defense. *See*, *e.g.*, Wal-Mart's answer ¶ 70, Dkt. No. 209 (496 case).

and (3) Nintendo would be materially harmed if Plaintiff is allowed to assert a claim inconsistent with its earlier conduct. *Id.* at 1041-2.

Interrogatory No. 1 seeks information about when Plaintiff knew or should have known of the alleged infringement of the Wii games. That information is important in determining when the laches period begins. Thus, the information sought is relevant and therefore discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Indeed, other courts recognize that a patentee's knowledge of the accused products is relevant to laches and estoppel. *See*, *e.g.*, *Fresenius Medical Care Holding, Inc, v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 655 (N.D. Ill. 2004) (granting motion to compel documents relating to notice of accused products, including continuing investigation documents, because such documents are "relevant to" the "defenses of laches and estoppel").

The information sought is also relevant to Defendants' exceptional case theory. A Plaintiff is "expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *See, e.g., Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (comparing Connectel PICs to PICs in *America Video Graphics, LP v. Electronic Arts, Inc.*, 359 F. Supp.2d 558, 560-61 (E.D. Tex. 2005) where AVG's experts played hundreds of video games, among other diligence, prior to filing suit and prior to serving PICS to rule out many non-infringing processes).

After Defendants filed their Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants, Dkt. No. 83 (496 case); Dkt. No. 9 (571 case), Plaintiff exploded the case to include more than 2,000 accused products when it served its Infringement Contentions on June 8, 2012. Extensive negotiations, two additional proposed sets

of infringement contentions, and motion practice ensued over the next 12 months. Ultimately, the Court granted Defendants' Motion to Enforce P.R. 3-1, Dkt. No. 269 (496 case), ordering Plaintiff to further amend its infringement contentions to, among other things, "include a description of how each accused instrumentality meets each claim element." Order, at 6.

Plaintiff provided its Third Amended Infringement Contentions on June 14, 2013. (TAIC Exhibit B, D and F1, which list the accused products, are provided with this Motion). Rather than describe how each of the accused instrumentalities allegedly met each claim element, Plaintiff dropped 90% of the accused products from the case. During the preceding year, however, Nintendo spent a great deal of time and effort analyzing the no-longer-accused Nintendo products, including discovering that a significant number of originally accused products were never even released. The retailer defendants also spent significant resources collecting and producing sales information for these products—products that should never have been accused. The information sought by Nintendo is thus relevant to whether Plaintiff was in possession of the products such that it could perform the requisite level of diligence necessary before submitting its original, first, second, and third sets of infringement contentions.

**B.     The Information Sought is Neither Privileged Nor Attorney Work Product.**

Plaintiff's privilege objections lack merit. It is well-understood that the attorney-client privilege only protects ***communications*** between a client and a lawyer. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("In determining whether the attorney-client privilege applies, we first note that Spalding's invention record constitutes a communication to an attorney"); *Hodges, Grant & Kaufman v. United States Government*, 768 F.2d 719, 721 (5th Cir. 1985) ("the privilege protects only confidential communications"). The information Nintendo seeks are two dates: the date Plaintiff first learned of each accused product and the

5

date Plaintiff first obtained or purchased each accused product.[5] Neither of those dates require the disclosure of attorney-client communications. The attorney-client privilege objection should, therefore, be overruled.

Plaintiff's work product objection is similarly misapplied. "[T]he work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Hickman v. Taylor*, 329 U.S. 495, 513 (1947) ("Denial of production of this nature does not mean that any material, non-privileged facts can be hidden from the petitioner in this case."); *In re Unilin Decor N.V.*, 153 Fed. Appx. 726, *2 (Fed. Cir. Oct. 19, 2005) (citing *Resolution Trust*).

It is well-recognized that the work product doctrine cannot shield a plaintiff's knowledge of accused products. For example, in *Sprint Communications Co., L.P. v. Big River Telephone Co., LLC.*, No. 08–2046–JWL, 2009 WL 1580307, at *5 (D. Kan. June 4, 2009), Big River served an interrogatory that stated: "Describe in detail the circumstances, including the dates, under which Sprint first became aware of any factual bases for its allegations that Big River has infringed or is infringing any claim of the Asserted Patents or any Related Patents; and identify persons having knowledge of the foregoing." Overruling Sprint's attorney-client privilege and work product objections, the court ordered an answer to the interrogatory because it "targets the factual circumstances that relate to Sprint's investigation into its infringement claims." *Id.*

Similarly, *Itrex, Inc. v. Workrite Uniform Co. Inc.*, No. 08 C 1224, 2011 WL 1224920 (N.D. Ill. Mar. 31, 2011) rejected work-product claims for requests for admissions directed to pre-suit testing. There, Defendants sought information regarding whether Plaintiff had

---

[5] Plaintiff produced purchase receipts for a very small number of accused products, but should also produce these receipts for the remaining accused products.

conducted a specific pre-suit test described in their request. *Id.* at *1. Plaintiff resisted providing that discovery, arguing "that the answers Defendants seek would necessarily reveal their attorneys' strategy in preparing an anticipated infringement claim." *Id.* The court disagreed. "Plaintiffs cannot meet their burden of demonstrating that answering the disputed requests would reveal anything more than underlying facts." *Id.*

The same is true here. Plaintiff cannot demonstrate that providing Nintendo the date it first became aware of each accused product and the date it first acquired or purchased each accused product reveals its attorneys' strategies, legal impressions, or any other type of attorney work product. The Court should, consequently, overrule the work-product objection.

## CONCLUSION

When Plaintiff learned of the accused Wii games and acquired or purchased them is relevant to laches and equitable estoppel. This information sought by Interrogatory No. 1 is not protected by any privilege or immunity. Plaintiff should, therefore, be compelled to provide a complete response to Interrogatory No. 1 for each of the 200 products that are accused in Plaintiff's TAIC.

| | |
|---|---|
| Dated: August 26, 2013 | Respectfully submitted |

By: /s/ Mark C. Nelson

Mark C. Nelson (Lead Attorney)
Texas Bar No. 00794361
mark.nelson@dentons.com
Steven M. Geiszler
Texas Bar No. 24032227
steven.geiszler@dentons.com
DENTONS US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

Trey Yarbrough
Texas Bar No. 22133500
trey@yw-lawfirm.com
Debby E. Gunter
Texas Bar No. 24012752
debby@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191

**Attorneys for Nintendo Co., Ltd.; Nintendo of America Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC; Best Buy Purchasing, LLC; BJ's Wholesale Club, Inc.; CompUSA.com, Inc.; TigerDirect, Inc.; GameStop Corporation; PC Connection, Inc.; QVC, Inc.; Sears, Roebuck & Co.; Kmart Corporation; Target Corporation; Toys "R" Us-Delaware; Trans World Entm't Corp.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Sam's East, Inc.; and Sam's West, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2013, I served the forgoing document with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.2.

By: /s/ Mark C. Nelson

**CERTIFICATE OF CONFERENCE**

I hereby certify that on August 23, 2013, a telephonic conference was held in compliance with Local Rule CV-7(h). The attendees on behalf of Plaintiff included Greg Maag (lead attorney), Elizabeth DeReieux (local counsel) and Michael Guthrie. The attendees on behalf of Defendants included myself (lead attorney), Trey Yarbrough (local counsel), Steven Geiszler, Jennifer Bennett and Megan Dyer. The parties discussed the issue raised in the foregoing Motion but reached an impasse for the reasons set forth above. Accordingly, the Motion is opposed.

By: /s/ Mark C. Nelson