UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ULTIMATEPOINTER, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>NINTENDO CO., LTD. *ET AL.*,<br><br>        Defendants. | Civil Action No.:  6:11-CV-496 (LED)<br>Consolidated With: 6:11-CV-571 (LED)<br><br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO NINTENDO DEFENDANTS' MOTION TO COMPEL
A COMPLETE RESPONSE TO INDIVIDUAL INTERROGATORY NO. 1**

The Court should deny Defendants Nintendo Co., Ltd. and Nintendo of America Inc.'s (collectively, "Nintendo") Motion to Compel seeking additional information responsive to their Interrogatory No. 1 because (1) the additional information is the work product of Plaintiff's trial counsel and was prepared in anticipation of litigation, and (2) the additional information is neither relevant nor calculated to lead to the discovery of admissible evidence.

**I.  Background**

On June 20, 2013, Nintendo served its First Set of Interrogatories on Plaintiff. Interrogatory No. 1 requested: "For each Accused Product in the table below, identify (i) the date You first learned of the product, and (ii) the date You first acquired and/or purchased the product." Ex. 1, Nintendo's First Set of Interrogatories at 5 (emphasis added). The term "You" was defined as including UltimatePointer as well as its "its . . . present and former . . . agents, . . . and other individuals . . . who . . . have acted . . . on their behalf[.]" *Id*. at 4. Thus, the interrogatory not only sought the date that UltimatePointer or its personnel learned of or acquired any accused products, but also the date the UltimatePointer's trial counsel learned of

or acquired any if the accused products, including knowledge or acquisition during the course of this lawsuit.

On July 23, 2013, Plaintiff responded to Interrogatory No. 1. Motion Ex. A, UltimatePointer's Answers and Objections to Nintendo's First Set of Interrogatories. In its response, Plaintiff first objected to the interrogatory to the extent the interrogatory sought disclosure of attorney work product and attorney-client privileged communications. *Id*. at 4-5. Plaintiff then identified the dates that UltimatePointer and/or its personnel learned of or acquired any of the accused products. For example, Plaintiff identified the date it learned of and acquired and/or purchased the Nintendo Wii Remote Plus, the Nintendo Wii Remote with Motion Plus Plug In, and the Nintendo Wii Sports Resort game. *Id*. at 6, 9, and 57. Plaintiff did not identify any dates that its **trial counsel** learned of or acquired the accused products because that information is protected by the work product doctrine and is not relevant.

**II. The Additional Information Sought is Protected by the Work Product Doctrine**

The work product doctrine protects an attorney's thoughts, mental processes, and strategies. *See Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947); *see also Fed. R. Civ. P.* 26(b)(3)(B); *Sporck v. Peil*, 759 F.2d 312, 315-16 (3rd Cir. 1985). "Rule 26 accords special protection to work product revealing the attorney's mental processes." *Upjohn Co. v. U.S.*, 449 U.S. 383, 400 (1981). This opinion work product "is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's though processes." *Sporck*, 759 F.2d at 316.

For example, in *Sporck*, the court held that the identification and selection of documents would reveal the attorney's mental impressions because it would reveal the attorney's selection process. *Id*. at 315-16. The court went on to quote the District of Delaware:

> In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research. There can be no doubt that at least in the first instance the binders were entitled to protection as work product.

*Id.* at 316 (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982). Similarly, the Northern District of New York has held that "[t]he paramount concern underlying the work product doctrine, particularly when invoked to protect attorney work product, is the preservation of an attorney's litigation strategies." *Flaherty v. Seroussi*, 209 F.R.D. 300, 306 (N.D.N.Y. 2002). In *Flaherty*, the court held that newspaper articles that an attorney had gathered and maintained were privileged because the decision to retain such documents might reveal litigation strategy. *Id.* at 306-07.

In the present case, a response to Interrogatory No. 1 to include the dates that Plaintiff's **trial counsel** learned of or acquired the specific accused products would reveal counsel's litigation strategies and thought processes. As the courts in *Sporck*, *James Julian*, and *Flaherty* found, production of this information "could not help but reveal important aspects of [Plaintiff's] understanding of the case." *James Julian*, 93 F.R.D. at 144. In the present case, Plaintiff's trial counsel both learned of and acquired products listed in the table attached to Interrogatory No. 1 in preparation for litigation or in the course of analyzing these products during litigation. By detailing these dates, Defendants would learn in what order Plaintiff focused its search for and analysis of infringing products. Defendants could also learn the relative significance of particular products, as well as the order that trial counsel analyzed particular infringement issues. Hence, as in *Sporck*, Defendants would gain insight into trial counsel's analysis and mental impressions of the accused products. In fact, as the court in *James Julian* notes, such a selection process may be more critical than legal research. *See id.*

While Nintendo cites to a few cases suggesting that material, non-privileged facts cannot be hidden from the opposing party, none of the cases hold that an attorney's thoughts, mental processes, or litigation strategy must be produced. *See* Motion at 6-7. For example, Nintendo cites to *Itrex, Inc. v. Workrite Uniform Co. Inc.*, No. 08 C 1224, 2011 WL 1224920 (N.D. Cal. Mar. 31, 2011). Motion at 6. However, the court in *Itrex* held that the plaintiff must produce the requested discovery because the plaintiff could not demonstrate that answering the "requests would reveal anything more than underlying facts." *Itrex*, 2011 WL at *1. However, here, as discussed above, an interrogatory answer that included knowledge held only by Plaintiff's trial counsel would reveal counsel's mental processes and litigation strategy. These mental impressions and strategies of trial counsel must be protected. *In re Echostar Communications Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (citing *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998); *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). Because any additional response to Interrogatory No. 1 would necessarily reveal Plaintiff's trial counsel's mental processes and litigation strategy, this additional information is protected from disclosure as work product.[CR1]

### III. The Additional Information Sought is Not Relevant or is Premature

    **A.    The Additional Information is Not Relevant to Defendants' Laches and Equitable Estoppel Defense**

The defense of laches arises when (1) the patent owner delays filing suit for an unreasonable period of time; and (2) the patent owner's delay caused material prejudice to the infringer. *A.C. Aukerman Co. v. R.L. Chaides Construction Co*., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (in banc), *on remand*, 29 U.S.P.Q.2d 1054 (N.D. Calif. 1993); Costello v. United States, 365 U.S. 265, 282 (1961); *Meyers v. Brooks Shoe Inc*., 912 F.2d 1459, 1461 (Fed. Cir. 1990); *Hottel Corp. v. Seaman Corp*., 833 F.2d 1570, 1572 (Fed. Cir. 1987). The period of delay is

measured from the time the patent owner knew or, in the exercise of due diligence, should have known of the allegedly infringing activity to the date of suit. *E.g., A.C. Aukerman Co.*, 960 F.2d at 1033; *Wanlass v. General Electric Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) ("The period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities."); *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed. Cir. 1998); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997); *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993). Thus, the period of delay cannot begin until the patent-in-suit has issued. *A.C. Aukerman Co.*, 960 F.2d at 1033 (noting that "the period does not begin prior to issuance of the patent").

Here, U.S. Patent No. 7,746,321 ("the '321 patent") issued on <u>June 29, 2010</u>. Ex. 2, U.S. Patent No. 7,746,321. Six months later, in December 2010, Plaintiff's counsel wrote to Nintendo and explained that Nintendo was infringing the '321 patent, but that Plaintiff was willing to grant a royalty-bearing license under the '321 patent. Ex. 3, Ltr. from G. Maag to Nintendo's General Counsel. Thus, Plaintiff knew of the alleged infringement by December 2010. In March 2011, Nintendo responded to Plaintiff's letter explaining that Nintendo was simply not interested in a license. Ex. 4, Ltr. from D. Pritchard to G. Maag. UltimatePointer then filed the present lawsuit on September 15, 2011, approximately six months after receiving Nintendo's letter declining a license, and less than <u>14 months</u> after the issuance of the patent. *See* Docket No. 1.

The dates of Plaintiff's investigation into the accused products either (1) before the '321 patent issued or (2) after Nintendo was notified of its infringement are not relevant to the laches defense. First, the period of delay for laches does not begin until the patent-in-suit issues. *See*

*A.C. Aukerman Co.*, 960 F.2d at 1033.  In the present case, the '321 patent issued on June 29, 2010.  Additionally, Plaintiff already knew of Nintendo's infringement no later than December 2010, the date of Plaintiff's letter to Nintendo.  Thus, knowledge or acquisition of accused products could only be relevant between June and December 2010.  Plaintiff's knowledge or acquisition of accused products outside that period cannot be relevant to a laches defense.[1]

      B.      **The Additional Information is Not Relevant to Defendants' Equitable Estoppel Defense**

Equitable estoppel arises when (1) the patentee through words, conduct, or silence communicates in a misleading way to the alleged infringer that he will not assert infringement; (2) the alleged infringer relies on such communication; and (3) the alleged infringer would be materially harmed if the patentee is later permitted to assert its patent.  *A.C. Aukerman Co.*, 960 F.2d at 1041-43 (citing D.B. Dobbs, *Handbook on the Law of Remedies* § 2.3, at 42 (1973)).  Unlike laches, equitable estoppel does not depend on the passage of an unreasonable period of time in filing suit.  *A.C. Aukerman Co.*, 960 F.2d at 1041-42.

The first element of equitable estoppel concerns the statements or conduct of the patentee, who must communicate, in a misleading way, that the accused infringer will not be subject to infringement claims.  *Id.* at 1042.  The second element requires reliance by the alleged infringer on the patentee's misleading conduct.  *Id.* (citing *Heckler v. Community Health Svcs.*, 467 U.S. 51, 59 (1984)).  Here, the alleged infringer must also show "a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead" with its allegedly infringing activity.  *Id.* at 1043.  The final element necessary to

---

[1] Even if the Court assumes that Plaintiff had knowledge of Nintendo's infringement on the date that the '321 patent issued, the maximum "delay" possible is still only 14 months (measured from the issue date to the date the suit was filed). Such a delay could not be considered unreasonable, especially in light of Plaintiff's intervening attempt to negotiate a license without resort to litigation.

establish equitable estoppel requires that the accused infringer establish that it would be materially prejudiced if the patentee is now permitted to proceed. *Id*. The prejudice may arise from a change of economic position or loss of evidence. *Id*. (*citing Advanced Hydraulics v. Otis Elevator Co.*, 525 F.2d 477, 481-482 (7th Cir.1975)). This prejudice must also be causally connected to the patentee's misleading communication. *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) (noting that capital investment is insufficient alone, with proof that "increased expenditures, i.e., on marketing and development, were in . . . related to actions taken by the patentee").

In its Motion, Nintendo fails to explain how knowledge or acquisition of accused products by Plaintiff's trial counsel would be relevant to equitable estoppel. Here, knowledge or acquisition of accused products is wholly unrelated to any of the three elements of equitable estoppel.

Moreover, in the present case, Nintendo was informed that Plaintiff was willing to grant Nintendo a royalty-bearing license under the '321 patent, but there is no suggestion that Nintendo could proceed to infringe the '321 patent even without a license. *See* Ex. 3, Ltr. from G. Maag to Nintendo's General Counsel. In fact, Nintendo expressly rejected the opportunity to negotiate a license. Ex. 4, Ltr. from D. Pritchard to G. Maag. Accordingly, date that Plaintiff's trial counsel became aware of certain accused products or acquired any of these products cannot possibly be relevant to an equitable estoppel defense.

### C. The Additional Information is Premature for Defendants' Exceptional Case Theory

In its Motion, Nintendo finally argues that knowledge or acquisition of the accused products by Plaintiff's trial counsel could be relevant to the adequacy of Plaintiff's pre-suit investigation. Motion at 4-5. However, the adequacy of Plaintiff's pre-filing investigation is

presently not at issue. As this Court has recently held, outside the Rule 11 context, the best practice is to deny discovery relating to the pre-filing investigation conducted by a plaintiff. Ex. 5, *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-CV-248 at *1-2 (E.D. Tex. Jul. 22, 2013) (quoting Patent Case Management Judicial Guide produced by the Federal Judicial Center § 4.6.1 (2009)). In the present case, Nintendo has not filed a Rule 11 motion or any other motion upon which it might question Plaintiff's pre-suit investigation. Thus, like its other alleged grounds of relevancy, speculation that Nintendo might someday file such a motion does not justify discovery of the pre-suit investigation performed by Plaintiff's trial counsel.

## IV. CONCLUSION

As shown above, the Court should deny Nintendo's Motion to Compel because additional information responsive to Interrogatory No. 1 consists of trial counsel's work product and its discovery is neither relevant nor calculated to lead to the discovery of admissible evidence.

Respectfully submitted this 12th day September, 2013.

/s/ Gregory L. Maag, with permission by
   Thomas L. Warden
Gregory L. Maag, *Lead Attorney*
State Bar No. 12748500
gmaag@conleyrose.com
Charles J. Rogers
State Bar No. 00786205
crogers@conleyrose.com
Thomas L. Warden
State Bar No. 24004174
twarden@conleyrose.com
Michael J. Guthrie
State Bar No. 24058267
mguthrie@conleyrose.com
CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile: (713) 238-8088

S. Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
D. Jeffrey Rambin
State Bar No. 00791478
jrambin@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of September, 2013, a true and correct copy of the foregoing ***Plaintiff's Opposition to Nintendo Defendants' Motion to Compel a Complete Response to Individual Interrogatory No. 1*** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing from the court is proof of service of the document on all counsel who are deemed to have consented to electronic service.

      /s/ Thomas L. Warden
      Thomas L. Warden