IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ULTIMATEPOINTER, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 6:11-CV-496-LED |
| v. | § | CASE NO. 6:11-CV-571-LED |
| | § | |
| NINTENDO CO., LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants' Second Motion to Compel Interrogatory Responses (Docket No. 363). The Court heard arguments regarding this motion on May 16, 2014. Based on the parties' briefings and arguments, the Court **GRANTS** the Motion.

## BACKGROUND

UltimatePointer alleges Nintendo and nineteen Retailer Defendants infringe U.S. Patent Nos. 7,746,321 ("the '321 Patent") and 8,049,729 ("the '729 Patent"). Nintendo denies UltimatePointer's infringement claims and seeks a declaration that this case is exceptional under 35 U.S.C. § 285.

The '321 and '729 Patents are directed to using a handheld direct pointing device to control placement of a cursor on an image being shown on a large screen display. '321 Patent, Abstract; '729 Patent, Abstract. Generally, the inventions track the movement of a direct pointing device as the position and orientation of the direct pointing device change within a three-dimensional space. The accused Wii system uses a Wii remote to control the placement of a cursor on an image. Docket No. 283, Ex. 1 at 19.

During the course of discovery, Defendants served Interrogatory No. 1 and Common Interrogatory No. 18 on UltimatePointer. UltimatePointer initially objected that answering

Interrogatory No. 1 would reveal attorney work product, but answered the interrogatory pursuant to a Court order that eliminated those concerns. Docket No. 350. Based on UltimatePointer's answer, Defendants filed the current motion to compel further response to Interrogatory No. 1. UltimatePointer also objected to answering Common Interrogatory No. 18. Defendants thus filed the current motion to compel UltimatePointer's complete response to that interrogatory, as well.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 26(b), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Courts have traditionally construed relevance broadly. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). Evidence is relevant if it "encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Thus, discoverable evidence is not limited to admissible evidence. Evidence is relevant and discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b).

## ANALYSIS

Defendants request the Court to compel UltimatePointer's complete response to two interrogatories. The first is Interrogatory No. 1, which asks UltimatePointer to provide the dates it first learned of and acquired each accused product. Docket No. 149; Docket No. 363. The second is Common Interrogatory No. 18, which asks UltimatePointer to provide detailed claim charts showing how its five prototypes practice claim 12 of the '321 Patent. Docket No. 363 at 8.

*Interrogatory No. 1: Accused Product Purchase Dates*

Interrogatory No. 1 asks UltimatePointer to provide the dates it first learned of and acquired each accused product.[1] Defendants assert this information is relevant to its claim that this is an exceptional case under 35 U.S.C. § 285 for failure to investigate. On June 8, 2012, UltimatePointer filed its original infringement contentions, accusing more than 2,000 products. Docket No. 149. It later reduced the number of accused products to 218. On December 20, 2013, UltimatePointer answered Interrogatory No. 1 for the 218 then-accused products. Docket No. 363, Ex. 2 at 7–18. It reported acquiring 113 of those accused products before June 8, 2012, when it filed its original infringement contentions. *Id.* But for 81 products, it provided a date range encompassing dates after June 8, 2012. *Id.* For the remaining 24 products, UltimatePointer provided an acquisition date after June 8, 2012. *Id.*

Defendants request that the Court compel UltimatePointer to identify the specific date it purchased or otherwise acquired each of the 81 products for which UltimatePointer provided a date range encompassing dates after June 8, 2012. UltimatePointer responds that specific dates should not be compelled because it answered Interrogatory No. 1 to the best of its ability based on all reasonably available information. Docket No. 367 at 3.

Whether the specific purchase date for the above-mentioned 81 products is after June 8, 2012 is relevant to Nintendo's exceptional case claim under 35 U.S.C. § 285. *See* Docket No. 350 at 8 (holding that "the dates UltimatePointer first learned of and acquired each accused product are currently relevant to Nintendo's claim that this is an exceptional case under 35 U.S.C. § 285."). Accordingly, Defendants' request is **GRANTED**.

---

[1] Interrogatory No. 1 reads: "For each Accused Product in the table below, identify (i) the date You first learned of the product, and (ii) the date You first acquired and/or purchased the product." Docket No. 289, Ex. A, UltimatePointer, LLC's Answers and Objections to Defendants Nintendo Co., Ltd. and Nintendo of America, Inc.'s First Set of Interrogatories to Plaintiff UltimatePointer, LLC (Nos. 1–3) at 4.

For 24 of the 218 products that were the subject of Interrogatory No. 1, UltimatePointer provided acquisition dates after June 8, 2012.  Docket No. 363, Ex. 2 at 7–18.  Thus, Defendants assert, it is reasonable to anticipate that an order compelling UltimatePointer to address all originally accused products will reveal that many more than 24 were not timely acquired.  Docket No. 369 at 2.  Therefore, Defendants request that the Court compel UltimatePointer to identify the specific date it purchased or otherwise acquired each of the more than 2,000 originally accused products not addressed in Plaintiff's Answer to Interrogatory No. 1.  UltimatePointer responds that its answer to Interrogatory No. 1 does not justify compelling further information because nothing has changed since the Court ordered it answer Interrogatory No. 1 for the 218 then-accused products.  Docket No. 367 at 4.

However, something has changed since the Court's previous order.  UltimatePointer has since revealed that it failed to timely acquire at least 24 of the 218 accused products considered.  That failure raises a suspicion that UltimatePointer also failed to timely acquire other originally accused products.  Accordingly, Defendants' request is **GRANTED**.  Within **thirty days** of this Order, UltimatePointer **SHALL** identify the specific date it purchased or otherwise acquired each of the more than 2,000 originally accused products, including those addressed in Plaintiff's Answer to Interrogatory No. 1.

UltimatePointer has claimed it is not possible to provide exact dates for some of the originally accused products.  *Id.* at 3.  Defendants request the Court to order a presumption that those products were not purchased or otherwise acquired, if at all, until after June 8, 2012.  Where a party is required to investigate accused products before filing an infringement suit, it is reasonable to expect that party to have some evidence of its investigation, and therefore its acquisition of the accused products before filing.  Accordingly, Defendants' request is

**GRANTED**. For any of the more than 2,000 originally accused products for which UltimatePointer cannot determine a purchase or acquisition date, the Court **ORDERS** a presumption that such products were purchased or acquired, if at all, after June 8, 2012.

UltimatePointer had previously argued that the dates it first learned of and acquired each accused product are attorney work product because they reveal the relative significance of particular products and the order UltimatePointer analyzed particular infringement issues. Docket No. 303 at 2–4. The work product value that those dates reveal, if any, is negligible. Accordingly, the Court's prior safeguard, that UltimatePointer need not specify which accused product each date is associated with, is unnecessary. Each of UltimatePointer's interrogatory answers given in accordance with this Order **SHALL** name the accused product associated with each date provided.

*Interrogatory No. 18: Embodying Products and Prototypes*

Nintendo also requests the Court to compel UltimatePointer's complete response to Common Interrogatory No. 18 by providing detailed claim charts showing how UltimatePointer's five prototypes practice claim 12 of the '321 Patent.[2] UltimatePointer asserts such claim charts are not relevant. Docket No. 367 at 5. According to its briefing, UltimatePointer does not intend to allege that its prototypes embody the asserted claims. *Id.* However, UltimatePointer's infringement contentions state that five prototypes practice claim 12 of the '321 Patent. Docket No. 363, Ex. 3 at 4 ('321 Patent Infringement Contentions).

---

[2] Common Interrogatory No. 18 reads: "For each UltimatePointer product and/or prototype that UltimatePointer maintains embodies one or more of the asserted claims and/or permits a user to practice one or more of the asserted claims (including, but not limited to, Upoint, PinPoint, and Prototypes 1-6 identified in Ex. J of Plaintiff's Disclosures Under Patent Local Rules 3-1 and 3-2), for each asserted claim, provide claim charts that show where the asserted claim(s) are embodied by or practiced by the product or prototype." Docket No. 363, Ex. 4 at 12.

Additionally, at the May 16, 2014 hearing, UltimatePointer refused to drop its reliance on the five prototypes at trial in exchange for not being required to produce the requested claim charts.

If UltimatePointer's infringement contentions assert that its five prototypes practice claim 12 and if UltimatePointer wishes to rely on those prototypes at trial, then UltimatePointer ought to provide Defendants with adequate notice of how those prototypes practice claim 12. Accordingly, Defendants' motion is **GRANTED**. UltimatePointer **SHALL** provide a complete response to Common Interrogatory No. 18 by providing detailed claim charts showing how its five prototypes practice claim 12 of the '321 Patent within **thirty days** of this Order.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Second Motion to Compel Interrogatory Responses (Docket No. 363). UltimatePointer **SHALL** identify the specific date it purchased or otherwise acquired each of the more than 2,000 originally accused products, including those addressed in Plaintiff's Answer to Interrogatory No. 1, within **thirty days** of this Order. For any of the originally accused products for which UltimatePointer cannot determine its purchase or acquisition date, the Court **ORDERS** a presumption that such products were purchased or acquired, if at all, after June 8, 2012. Further, each of UltimatePointer's interrogatory answers given in accordance with this Order **SHALL** name the accused product associated with each date provided. Finally, UltimatePointer **SHALL** provide a complete response to Common Interrogatory No. 18 by providing detailed claim charts showing how its five prototypes practice claim 12 of the '321 Patent within **thirty days** of this Order.

**So ORDERED and SIGNED this 4th day of June, 2014.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**