**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **ULTIMATEPOINTER, L.L.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:11-CV-496-LED** |
| **v.** | § | **CASE NO. 6:11-CV-571-LED** |
| | § | |
| **NINTENDO CO., LTD.,** *et al.,* | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Docket No. 83[1]) and Defendants' Motion to Sever the Retailer Defendants for Misjoinder and to Dismiss or Stay the Litigation Against the Retailer Defendants (Docket No. 167).  Having considered the parties' written submissions and the Order of the U.S. Court of Appeals for the Federal Circuit in *In re Nintendo Co., Ltd.*, 544 Fed. App'x 934 (Fed. Cir. 2013) ("*In re Nintendo II*"), Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Docket No. 83) is **GRANTED**.  Defendants' Motion to Sever the Retailer Defendants for Misjoinder and to Dismiss or Stay the Litigation Against the Retailer Defendants (Docket No. 167) is **DENIED AS MOOT**.

## BACKGROUND

In September 2011, Plaintiff UltimatePointer, LLC ("UltimatePointer") filed suit against Nintendo Co., Ltd. and Nintendo of America (collectively, "Nintendo"), and nineteen[2] Retailers

---

[1] Unless otherwise noted, all citations to docket entries refer to Case No. 6:11-cv-496.

[2] UltimatePointer's original complaint accused seventeen Retailer Defendants.  Docket No. 1.  Six days after filing its original complaint, UltimatePointer filed an amended complaint that added two Retailer Defendants, bringing the total to nineteen.  Docket No. 3.

alleging infringement of U.S. Patent No. 7,746,321 ("the '321 Patent"). Specifically, UltimatePointer alleged Defendants infringed by making, using, selling, offering to sell, and/or importing Nintendo Wii systems, games, controllers, sensors, and related accessories ("Nintendo products"). In November 2011, UltimatePointer filed a second infringement case against the same Defendants and the same Nintendo products alleging infringement of the newly issued U.S. Patent No. 8,049,729 ("the '729 Patent"). The first and second cases were later consolidated for pretrial purposes. Docket No. 276. On January 10, 2012, Defendants moved to sever and stay the claims against the Retailers, and to transfer the remaining claims against Nintendo to the Western District of Washington. Docket No. 83.

UltimatePointer then asserted in its infringement contentions, and ultimately amended its complaints to include, infringement claims against the Retailers based on their sale and offer for sale of hundreds of Wii games and accessories created and manufactured by third-party manufacturers ("non-Nintendo products"). Docket No. 149. Defendants, in turn, filed a new motion to sever those non-Nintendo product claims. Docket No. 167. The Court denied both motions to sever. Docket No. 184; Docket No. 257. Defendants then appealed, filing a petition for writ of mandamus in the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit granted the petition, directing this Court to reconsider the motions to sever in light of its opinion. *In re Nintendo II*, 544 Fed. App'x at 943.

Nintendo and the Retailers are alleged to be jointly liable for selling the accused Nintendo products. Docket No. 189 at ¶ 28. Nintendo has indemnified the Retailers and is paying for their defense. Docket No. 83 at 5. UltimatePointer values its infringement claims against the Retailers at about $18.5 million. Docket No. 366 at 5. It attributes over $17.5 million to Nintendo products, and the remainder to non-Nintendo products. Docket No. 368 at 5.

## MOTION TO SEVER AND TRANSFER THE CLAIMS AGAINST NINTENDO

The Court first considers whether claims against Nintendo should be severed and transferred to the Western District of Washington.  Pursuant to the Order of the U.S. Court of Appeals for the Federal Circuit in *In re Nintendo II*, for the purposes of this Motion, the Court considers the claims as they were originally filed, which only included Nintendo products claims.  544 Fed. App'x at 940.  The subsequent addition of non-Nintendo product claims against the Retailers does not factor into this inquiry.  *Id.*

### Joinder Under the Federal Rules and America Invents Act

Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party." FED. R. CIV. P. 21.  "Rule 21 provides courts with considerable latitude to order severance solely for purposes of facilitating transfer."  *In re Nintendo II*, 544 Fed. App'x at 940–41 (citing, *e.g.*, *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).  In patent cases, "motions to sever are governed by Federal Circuit law because joinder in patent cases is based on an analysis of the accused acts of infringement . . . ." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("*In re EMC I*").

Because Rule 21 does not provide a standard for district courts to apply in deciding whether parties or claims are misjoined, courts have looked to joinder standards for guidance.  *In re EMC I*, 677 F.3d at 1356.  Under Rule 20, defendants may be joined in a single action only if: (1) the claims against them are "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) a "question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).  Effective September 16, 2011, joinder in patent cases is governed by the America Invents Act ("AIA").  The AIA's

3

joinder provision is more stringent than Rule 20, adding a requirement that the transaction or occurrence must "relat[e] to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process . . . ." 35 U.S.C. § 299(a).

UltimatePointer accuses each defendant of infringement by making, using, selling, or offering to sell Nintendo Wii systems.  Docket No. 1 ¶ 22; 6:11-cv-657, Docket No. 1 ¶ 22. Thus, joinder of the Retailers satisfies the Rule 20 "transaction-or-occurrence" test.  *See In re EMC I*, 677 F.3d at 1356 (holding that "where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied"). Further, a question of fact common to all defendants—whether the accused Nintendo Wii system infringes the asserted patents—will arise in the action.  *See* Fed. R. Civ. P. 20(a)(2). Accordingly, the Rule 20 joinder requirements are satisfied.  The AIA's additional joinder requirement is also satisfied because the alleged infringing acts relate to making, using, selling, or offering to sell the same accused Nintendo Wii systems.  *See* 35 U.S.C. § 299(a).

**<u>Fairness</u>**

The Rule 20 and AIA joinder requirements are necessary, but not sufficient, conditions for joinder.  *In re Nintendo II*, 544 Fed. App'x at 939.  "[E]ven if a plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants, 'district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'"  *In re EMC I*, 677 F.3d at 1360 (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).  Courts in this and other districts exercise their discretion to refuse joinder in order to facilitate transfer only when three conditions are met: "(1) the remaining claims are peripheral to the severed claims; (2) adjudication of the severed claims would potentially dispose of the

remaining claims; and (3) the § 1404(a) factors warrant transfer of the severed claims." *Ei-Land Corp. v. Simpson Strong-Tie Co., Inc.*, No. 2:09-cv-337, 2010 WL 3859783, at *6 (E.D. Tex. Sept. 30, 2010); *accord, e.g.*, *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003).

## I.    The remaining claims are peripheral to the severed claims

UltimatePointer argues its claims against the Retailers are not peripheral because its original complaint encompasses retail sales of non-Nintendo products.  Docket No. 361 at 4–5. However, this claim is without merit.  UltimatePointer's original complaint accused "Nintendo Wii systems, games, and related accessories" of infringement.  Docket No. 1 at ¶ 1.  This only included Nintendo products.  As the Federal Circuit held, non-Nintendo products did not appear in these cases until UltimatePointer filed its infringement contentions and later when it amended its complaint.  *In re Nintendo II*, 544 Fed. App'x at 937.  Further, the Federal Circuit made clear that "the subsequent addition of new non-Nintendo product claims against the retailer defendants does not factor into this inquiry."  *Id.* at 940.

Defendants contend that the claims against the Retailers are peripheral.  They claim Nintendo designs, develops, and tests the Wii system and that it coordinates the manufacture of the Wii system, games, and accessories.  Docket No. 83 at 6.  It asserts that the Retailers, on the other hand, are not involved in the design, manufacture or importation of the accused products. *Id.*  Further, Defendants state that Nintendo has indemnified and is paying for the defense of the Retailers.  *Id.*

Where one or more defendants design and manufacture the accused products, courts have found that claims against additional parties that do not do so are peripheral.  *See Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010); *Koh*, 250 F.

5

Supp. 2d at 632; *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 585

(D.N.J. 2001).  For example, "[a] patent infringement claim against a distributor is peripheral to

a claim against the manufacturer."  *LG Electronics, Inc. v. Asustek Computers*, 126 F. Supp. 2d

414, 422 (E.D. Va. 2000); *accord LG Electronics Inc. v. Advance Creative Computer Corp.*, 131

F. Supp. 2d 804, 811 (E.D. Va. 2001).  Nintendo designs and coordinates the manufacture of the

accused Nintendo products.  UltimatePointer has not presented evidence that the Retailers had

any role in the design, manufacture, or importation of the accused products.  Nintendo has also

indemnified the Retailers and is paying for their defense.  Accordingly, the claims against the

Retailers are peripheral to the claims against Nintendo.

## II.    Adjudication of severed claims would potentially dispose of the remaining claims

UltimatePointer contends adjudication of the claims against Nintendo would not dispose

of the claims against the Retailers.  According to UltimatePointer, this is because its claims

against Nintendo and the Retailers accuse different products and assert different bases of liability

from one another.  Docket No. 366 at 3.  Specifically, it asserts that the original complaint

includes non-Nintendo products and that the Retailers could be independently liable for induced

infringement.  Docket No. 130 at 8; Docket No. 361 at 4–5.

Defendants respond that it would be difficult to imagine a situation in which the Retailers

would be liable for induced infringement but Nintendo would not.  Docket No. 131 at 3–4.  They

also argue that adjudication of the claims against Nintendo would dispose of the claims against

the Retailers regarding Nintendo products.  They assert that if Nintendo is found not to infringe,

then UltimatePointer has no claims against the Retailers.  Docket No. 83 at 7.  Alternatively,

Defendants maintain, if Nintendo is found to infringe and UltimatePointer collects damages from

Nintendo, UltimatePointer is barred from recovering twice for the same sale.  *Id.*  Further, they

stipulate that the Retailers "agree to be bound by the transferee court's decisions with respect to the Nintendo claims . . . ."  Docket No. 131 at 4–5.

Nintendo and the Retailers are alleged to be jointly liable for selling the accused Nintendo products.  Docket No. 189 at ¶ 28.  UltimatePointer's original complaint only accused Nintendo products.  As Defendants point out, it would be difficult to imagine a situation in which only the Retailers were found to have induced infringement.  Thus, if Nintendo is not found to infringe, then UltimatePointer likely has no infringement claims against the Retailers regarding those Nintendo products.  If, on the other hand, Nintendo is found to infringe and pays damages, then UltimatePointer cannot also collect damages from the Retailers for Nintendo products, because it cannot receive a double recovery for the same sales.  *See Shifferaw*, 2010 WL 1064380, at *3.  Further, the fact that the Retailers have stipulated to be bound by the Western District of Washington's rulings weighs heavily towards a finding that adjudication of the claims against Nintendo would likely dispose of the remaining claims.  Docket No. 131 at 4–5; *see Shifferaw*, 2010 WL 1064380, at *3.  Accordingly, adjudication of the claims against Nintendo would likely dispose of the claims against the Retailers.

## III.    § 1404(a) factors warrant transfer of the severed claims

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

7

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("*In re Nintendo I*").  The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo I*, 589 F.3d at 1198.  The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo I*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*").  Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.  *Id.* at 315; *In re Nintendo I*, 589 F.3d at 1200.  Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *In re Volkswagen II*, 545 F.3d at 314–15.

### a.  Threshold

Nintendo of America's principal place of business is located in the Western District of Washington.  Docket No. 83 at 9.  UltimatePointer disputes whether these cases could have been

filed there against the Retailers, but not against Nintendo. Docket No. 130 at 14. Accordingly, the threshold test as to Nintendo is satisfied.

### b. Private Factors

### i. Relative Ease of Access to Sources of Proof

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314–15; *In re Nintendo I*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Defendants identify relevant Nintendo documents in Japan, Washington, and California. They assert that most of Nintendo's technical documents are located at Nintendo Co., Ltd.'s principal place of business in Japan; most of its marketing, sales, and financial documents are located at Nintendo of America's headquarters in the Western District of Washington; and other marketing, sales, and financial documents are located in California. Docket No. 83 at 9–10. UltimatePointer does not identify any sources of proof in this District. Docket Nos. 130, 132,

361, 366.  Since relevant documents are located in the Western District of Washington and none are located in this District, this factor favors transfer.

### ii. Availability of Compulsory Process

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  *See In re Volkswagen II*, 545 F.3d at 316.  This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power."  *Id.*  "Absolute subpoena power" is subpoena power for both depositions and trial.  *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Neither party identifies non-party witnesses within the subpoena power of this District or the Western District of Washington.  Accordingly, this factor is neutral.

### iii. Convenience of Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding."  *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial.  *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor.  *See In re Volkswagen I*, 371 F.3d at 204–05.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.* at 205.  When applying the "100 mile rule" the threshold question is whether the

transferor and transferee venues are more than 100 miles apart.  *See In re Volkswagen II*, 545
F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  If so, then a court
determines the respective distances between the residences (or workplaces) of all the identified
material and relevant witnesses and the transferor and transferee venues.  *See In re Volkswagen
II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  The "100 mile rule" favors transfer (with
differing degrees) if the transferee venue is a shorter average distance from witnesses than the
transferor venue.  *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.
Furthermore, the existence or non-existence of direct flights can impact the analysis of travel
time.  *See In re Volkswagen I*, 371 F.3d at 204 n.3.  Thus, regardless of the "straight line"
distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue,
then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied.
*See In re Genentech*, 566 F.3d at 1344.  When a particular witness will be required to travel "a
significant distance no matter where they testify," then that witness is discounted for purposes of
the "100 mile rule" analysis.  *See id.* (discounting European witnesses and documents
transported from Washington D.C. in the convenience analysis when reviewing a denial of
transfer from Texas to California).

Defendants identify four relevant witnesses in Japan, three in the Western District of
Washington, and one in California.  Docket No. 83 at 11.  UltimatePointer does not identify any
witnesses in this District.  Docket Nos. 130, 132, 361, 366.  Since relevant witnesses are located
in the Western District of Washington and none are located in this District, this factor favors
transfer.

11

### iv.   Other Practical Problems

Section 1404(a) requires that a Court ruling on a motion to transfer also take into account "the interest of justice."   28 U.S.C. § 1404(a); *In re Volkswagen II*, 545 F.3d at 315 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'").   The Federal Circuit has found that, in patent cases, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."   *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citations omitted).

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer.   *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

UltimatePointer argues that judicial economy would be served by trying the claims against Nintendo and the Retailers in the same district because they present similar factual and legal issues.   Docket No. 361 at 8.   It asserts that the severed cases against the Retailers would cover the same two patents and the same accused products as the claims against Nintendo, plus third-party controllers.   *Id.* at 7.   UltimatePointer contends keeping these cases in this District would also serve judicial economy because the Court has gained valuable experience with the asserted patents and accused products through its management of these cases.   *Id.*   It notes the cases against the Retailers have already completed claim construction and fact discovery, and some summary judgment rulings have been made.   *Id.*

12

Defendants respond that the judicial economies gained by trying the claims against Nintendo and the Retailers in the same district are diminished if the Court stays the claims against the Retailers.  They assert that the cases against Nintendo would likely dispose of the claims against the Retailers, if stayed.  Docket No. 364 at 8.  This is because, according to Defendants, issue preclusion and the prohibition of double recovery dictate that the common infringement claims against Nintendo and the Retailers would be decided in an earlier suit against Nintendo.  *Id.* at 10; Docket No. 83 at 7.

Judicial economies that would be gained by trying the claims against Nintendo and the Retailers in the same district are negated because, as explained below, the claims against the Retailers will be stayed pending resolution of the claims against Nintendo.  Since Nintendo and the Retailers are alleged to be jointly liable for selling the accused Nintendo products, an earlier trial of the claims against Nintendo will resolve those claims against the Retailers.  Docket No. 189 at ¶ 28.[3]

Furthermore, judicial economies attributable to the Court's experience with the patents and accused products, gained through its management of these cases, will not be considered. The majority of that experience has been gained after Nintendo first filed the current motion to sever, transfer, and stay nearly two and a half years ago, on January 20, 2012.[4]  This Court may not rely on judicial economy involved in retaining the very cases that are the subject of the current motion.  *See In re EMC Corp.*, 501 Fed. App'x 973, 976 (Fed. Cir. 2013) ("*In re EMC II*").

---

[3] Three Nintendo products remain accused: the Nintendo Wii system and two Nintendo Wii controllers.  Docket No. 361 at 1.  Claims regarding Nintendo products account for about $17.5 million of UltimatePointer's $18.5 million damages claim against the Retailers.  Docket No. 366 at 5; Docket No. 368 at 5.

[4] Since Nintendo originally filed its motion to sever, transfer, and stay, the Court has held two claim construction hearings, construed thirty-one terms of the '321 and '729 Patents, and granted summary judgment of non-infringement regarding an asserted claim.  Docket No. 268; Docket No. 335; Docket No. 343.

13

Additionally, the litigation tactics UltimatePointer has employed in an attempt to maintain venue in this District are now in clearer focus. Those tactics have not supported the interests of justice. Defendants have had to wait nearly two and a half years to have their motion to transfer properly heard. That significant delay arose from this Court's reliance on UltimatePointer's justification for venue in this District. UltimatePointer's original complaint accused only Nintendo products. Docket No. 1 at ¶ 1. Even though neither UltimatePointer nor Nintendo had ties to this District,[5] UltimatePointer filed suit in this Court alleging infringing acts against not only Nintendo, but also nineteen Retailers. Docket No. 1 ¶¶ 28–29, 33–49; Docket No. 3. The accused Retailers are located almost entirely in the eastern half of the country. Docket No. 130 at 15. Tellingly, UltimatePointer did not accuse other major retailers like Amazon.com, Costco, Fry's, or eBay, which are located in Washington and California. Docket No. 1; Docket No. 433 at 18:18–24. UltimatePointer then used the presence of the accused Retailers to argue that the case should not be transferred. Docket No. 130 at 14 (arguing, for example, that Nintendo had not shown the Retailers were subject to personal jurisdiction in Washington). It also added claims against the Retailers regarding non-Nintendo products and used the presence of those added claims to argue that the case against Nintendo should not be severed. Docket No. 130 at 5–9. Now, UltimatePointer argues that it should benefit from the judicial experience gained during the nearly two and a half year delay it perpetuated. UltimatePointer's tactics are not in the interest of justice, but contrary to it. Accordingly, this factor favors transfer.

---

[5] UltimatePointer's supplemental briefing concedes this point, asserting only that judicial economy weighs against transfer and ignoring other relevant transfer factors such as access to sources of proof, availability of compulsory process, cost of attendance for witnesses, court congestion, and local interests. Docket No. 361 at 7–9; Docket No. 366 at 4.

### c.  Public Factors

#### i.  Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206.  This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues.  *See id.*  Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests.  *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.  Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue.  *In re Nintendo I*, 589 F.3d at 1198.

Defendants argue Nintendo's substantial presence in the Western District of Washington creates a substantial local interest in adjudicating Nintendo's patent cases there.  Docket No. 83 at 13.  UltimatePointer does not identify a local interest in this District.  Accordingly, this factor favors transfer.

#### ii.  Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis.  *In re Genentech*, 566 F.3d at 1347.  However, this factor appears to be the most speculative, and this factor alone should not outweigh other factors.  *Id.*

These cases are set for trial in less than three months.  In order to prevent lengthy delay that might otherwise result from transfer, the undersigned Chief Judge of the Eastern District of Texas conferred with the Chief Judge of the Western District of Washington regarding the

15

efficient transfer of these cases.  This cooperation has ensured that any delay resulting from transfer will be minimized.  Accordingly, this factor is neutral.

### iii.  Familiarity of Forum with Governing Law / Conflict of Laws

The remaining public interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—are not disputed by the parties.  Thus, they are neutral in the analysis.

### d.  Application of the Transfer Factors

Four factors favor transfer to the Western District of Washington: the relative ease of access to sources of proof, the cost of attendance for willing witnesses, all other practical problems, and the local interest in having localized interests decided at home.  The remaining factors are neutral.  Defendants have thus shown that it is clearly more convenient for the parties and witnesses to transfer these cases to the Western District of Washington.  Accordingly, the § 1404(a) factors warrant transfer of the severed claims.

## IV.  Summary

All three factors that courts consider when exercising their discretion to refuse joinder to facilitate transfer are met.  The claims against the Retailers are peripheral to the claims against Nintendo, adjudication of severed claims against Nintendo would potentially dispose of the remaining claims against the Retailers, and the § 1404(a) factors warrant transfer of severed claims against Nintendo.  Accordingly, Defendants' Motion to Sever and Transfer the Claims Against Nintendo is **GRANTED**.

16

## V.    Coordinated Transfer

The Supreme Court stated that § 1404(a) should be regarded as a "federal judicial housekeeping measure." *See Van Dusen v. Barrack*, 376 U.S. 614, 636 (1964).  In that regard, delays that would otherwise result from transfer can be resolved by cooperation among the district courts.  *Cf. In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (rejecting any form of bright-line rule in the § 1404(a) analysis).

The potential for significant delay in securing a timely trial date in the transferee district is a major concern with the impending transfer of these cases, especially when they are this close to trial.  Motions to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute.  The negative impact of such delay would be especially pronounced in these cases, which are set for trial in less than three months, on September 8, 2014.

Accordingly, prior to issuing this opinion, the undersigned Chief Judge of the Eastern District of Texas conferred with the Chief Judge of the Western District of Washington regarding the most efficient manner in which to manage the transfer of these cases in light of this Court's impending trial date.  The Western District of Washington has agreed to accommodate this transfer by drawing a cause number and trial judge with the hope that an early trial date can be secured.

Accordingly, the Clerk of this Court **SHALL** immediately transmit the case file to the Western District of Washington, case number 2:14-cv-865-RSL, Judge Robert S. Lasnik, presiding.  Within **seven days** of this Order, the parties **SHALL** file a joint notice requesting a case scheduling conference before Judge Lasnik for all future proceedings.

## MOTION TO STAY THE CLAIMS AGAINST THE RETAILERS

The Court next considers whether the severed claims against the Retailers should be stayed pending resolution of the claims against Nintendo.

### Applicable Law

The district court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. When considering whether to stay claims, courts balance competing interests by evaluating three factors: "'(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Lodsys v. Brother Int'l Corp.*, No. 2:11-cv-90, 2013 U.S. Dist. LEXIS 51336, at *42 (E.D. Tex. Jan. 14, 2013) (quoting *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. Feb. 9, 2005)).

### Analysis

UltimatePointer argues that staying the Retailer claims would prejudice it by delaying the resolution of those claims, which it values at $18.5 million. Docket No. 361 at 10; Docket No. 366 at 5. It also emphasizes that claim construction and fact discovery are complete, and that trial is set for September 8, 2014. Docket No. 361 at 10.

Defendants respond that less than $1 million of the $18.5 million asserted against the Retailers is based on the sale of non-Nintendo products, so an earlier-tried case against Nintendo would resolve the vast majority of claims against the Retailers. Docket No. 368 at 4–5. They

18

state that at least part of all the asserted claims—even claims accusing third-party products—are alleged to read on the Wii console.  Docket No. 364 at 10.  Therefore, they argue, if the Wii console does not infringe, then issue preclusion would completely prevent UltimatePointer from alleging infringement against the Retailers.  *Id.*  Defendants also state that UltimatePointer cannot receive a double recovery for the same sales and that the Retailers have agreed to be bound by the rulings of the Western District of Washington.  Thus, they assert, a finding of infringement in an earlier Nintendo litigation would resolve that issue with respect to the Retailers.  *Id.*; Docket No. 83 at 7.

In this case, the first factor is neutral because a stay would not unduly prejudice UltimatePointer.  Like all patent plaintiffs, UltimatePointer has "an interest in the timely enforcement of [its] patent rights."  *See Allergan, Inc. v. Sandoz Inc.*, No. 2:12-cv-207, 2013 WL 1222347, at *1 (E.D. Tex. March 25, 2013).  Coordination among the district courts will ensure that any delay resulting from transfer will be minimized.  Since resolution of the claims against Nintendo could resolve UltimatePointer's $17.5 million claim against the Retailers regarding Nintendo products, that interest is protected whether or not those claims are stayed.  UltimatePointer's remaining roughly $1 million claim regarding non-Nintendo products is less significant than its Nintendo product claims and might be resolved by the transferred Nintendo case.  Accordingly, this factor is neutral.

The second factor, whether a stay will simplify the issues in question and the trial of the cases, favors granting the stay.  At a minimum, resolution of the claims against Nintendo would resolve the claims regarding Nintendo products, which account for about $17.5 million of UltimatePointer's $18.5 million damages claim against the Retailers.  Docket No. 366 at 5;

Docket No. 368 at 5.  At most, resolution of the claims against Nintendo would resolve the entire case against the Retailers.  Accordingly, this factor favors granting the stay.

The third factor also favors granting the stay.  Although discovery is complete and trial is set for September 8, 2014, coordination among the district courts will ensure that trial of the claims against Nintendo products is not unduly delayed.  Further, it would be unjust to reward UltimatePointer's attempt to secure venue in this District by considering the advanced status of these cases to deny stay.  The Court will thus consider this portion of the Motion as of the time Defendants first filed their motion to sever, transfer, and stay.  At that time, trial was more than two and a half years away.  Accordingly, this factor favors granting the stay.

In total, two factors favor staying the claims against the Retailers pending resolution of the claims against Nintendo.  The remaining factor is neutral.  Accordingly, Defendants' Motion to Stay the Claims Against the Retailer Defendants is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Docket No. 83) is **GRANTED**.  Upon final order of transfer, Nintendo **SHALL** immediately inform the transferee judge and request a case scheduling conference for all future proceedings through trial.  Defendants' Motion to Sever the Retailer Defendants for Misjoinder and to Dismiss or Stay the Litigation Against the Retailer Defendants (Docket No. 167) is **DENIED AS MOOT**.

So **ORDERED** and **SIGNED** this 17th day of June, 2014.

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**